UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSEPH N. BROYLES

VERSUS

CANTOR FITZGERALD & CO., ET AL.

CIVIL ACTION

NO. 10-854-JJB

*consolidated with*

JOSEPH N. BROYLES, ET AL.

VERSUS

CANTOR FITZGERALD & CO., ET AL.

CIVIL ACTION

NO. 10-857-JJB

# RULING ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND EFFECT OF INJUNCTION

Before the Court are two matters. The first is a Supplemental Report and Recommendation issued by Magistrate Judge Stephen Riedlinger concerning removal jurisdiction. (Doc. 78).[1] The second concerns a Notice of Preliminary Injunction. (Doc. 79). Oral argument is unnecessary.

## I.

Commonwealth Advisers, Inc. ("Commonwealth") and its CEO Walter Morales ("Morales") solicited the plaintiffs to invest in one or more "pooled asset" hedge funds that were created and controlled by Commonwealth. (Doc. 59 at 10). Plaintiffs collectively invested millions to acquire a membership interest in these funds, which were supposed to each have individual investment strategies, but the plaintiffs allege that all the funds had essentially the same investment strategy of investing in collateralized debt obligations (CDO) (referred to as "Collybus notes"), which were created by Cantor Fitzgerald & Co. ("Cantor"). (Doc. 59 at 11).

---

[1] All docket references will be to the lead case, No. 10-854, unless otherwise indicated.

1

Plaintiff Joseph Broyles filed two suits which this Court has consolidated. The first, Case No. 10-854, a direct suit filed on September 16, 2010, and removed to this Court, contains class allegations against Cantor, Commonwealth, and Commonwealth's officers or relevant shareholders,[2] alleging that plaintiff-investors were harmed by misrepresentations and breaches of fiduciary obligations related to decisions made by Morales and Commonwealth about their investment accounts. (Doc. 59 at 12). A derivative action, which was also removed to this court, was filed on November 8, 2010, was also filed by the investors in the name of the hedge funds.[3] (*See* Doc. 1, Case No. 10-857). That suit asserts that the managers of those funds breached their fiduciary duty to their shareholders because they invested in the Collybus notes as a result of receiving improper financial benefits from Cantor even though the investments harmed shareholder interests. (No. 10-857, Doc. 1-6 at 31).

On October 25, 2011, the funds filed for bankruptcy protection,[4] and thereafter they entered into an agreement with the plaintiff-investors, which tolled various deadlines and enjoined further litigation in the direct suit. (Doc. 79-1). In early February, the tolling agreement expired, and the debtor funds worried that their interests would be affected negatively if the direct suit proceeded because it could, among other things, jeopardize the reorganization plan in the bankruptcy court or weaken the debtor's limited assets. (Doc. 79-1). On April 5, 2012, some of the debtors sought declaratory and injunctive relief against the plaintiff-investors in an adversary proceeding (Adv. Proceeding No. 12-50470 (Bankr. D. Del.)) to prevent further

---

[2] This group consists of CEO Walter Morales, shareholder and control person Jennifer Morales, compliance officer and Vice President James F. O'Beirne, shareholder and control person Noel Caldwell, and Chief Compliance Officer/Chief Operating Officer Willie Warrington, Jr.

[3] The funds are CA Core Fixed Income Fund, LLC; CA Core Fixed Income Offshore Fund, Ltd. a/k/a CA Core Fixed Income Fund, Ltd; CA High Yield Fund, LLC); CA High Yield Offshore Fund, Ltd. a/k/a CA High Yield Fund, Ltd.; CA Strategic Equity Fund, LLC); CA Strategic Equity Offshore Fund, Ltd., Sand Spring Capital III, LLC; Sand Spring Capital III, Ltd.; and Sand Spring Capital III Master Fund, LLC.

[4] The funds have all filed for Chapter 11 bankruptcy, and their cases have been consolidated before the United States Bankruptcy Court for the District of Delaware. (*See* Lead Case, Chapter 11 No. 11-13393, (Bankr. D. Del.)).

litigation, and the parties agreed to a preliminary injunction that protected the plaintiff-investors' future litigation interests in the direct suit and avoided the substantial cost that would have resulted from continuing litigation. (Doc. 80-1). The derivative action was automatically stayed under the Bankruptcy Code and has remained stayed even though it is consolidated with the direct suit. (Doc. 81 at 2). Cantor alleges it should not be bound in the direct action by the injunction agreement because it occurred in secret and it was not a party to the adversary proceedings. (Doc. 80 at 2).

II.

The two questions for this Court to consider are: 1) whether, after deciding that jurisdiction in this case was proper, a subsequent decision of the Fifth Circuit dictates a different conclusion; and 2) whether allowing the suit to proceed would be improper due to the injunction issued by the Delaware bankruptcy court. The Court treats each in turn.

A.

After this Court found jurisdiction and removal proper under the Class Action Fairness Act and the Securities Litigation Uniform Standards Act, the parties were directed to submit briefs addressing the impact of the decision in *Roland v. Green*, 675 F.3d 503 (5th Cir. 2012). The magistrate judge reviewed those filings and found jurisdiction and removal were proper. Neither party objects to the magistrate judge's report. Likewise, this Court finds no error in the Report. Accordingly, the Court hereby CONFIRMS the Supplemental Report (Doc. 78) and ADOPTS it. Jurisdiction has been established, and removal was proper. This reaffirms the magistrate judge's previous ruling (Doc. 55), which this Court also confirmed and adopted (Doc. 58).

B.

The Notice of Preliminary Injunction (Doc. 79) merits more detailed analysis. The Delaware bankruptcy court issued an injunction based on a consent judgment between Broyles and the hedge funds. Cantor was not a formal party to the agreement, but it was present at the proceedings which resulted in the injunction being issued. The injunction was entered for the express purpose of prohibiting either party from prosecuting the litigation in this court in order to reserve the Delaware bankruptcy court as the proper forum for resolving the claims against the funds.

The question is, how does this affect Cantor and its attempts to dismiss the suit in this forum? Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds three groups of parties: A) the parties; B) the parties' officers, agents, servants, employees and attorneys; and C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B). The question, therefore, is whether Cantor acted in concert with the parties who filed the adversary proceeding, because it is neither a party nor an agent of a party to the injunction.

> [Rule 65] is derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.

*Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945). In *FTC v. Assail, Inc.*, the Fifth Circuit held three parties acted in concert with the defendant because a large amount of money in their bank account came from the defendant and they were essentially acting as one company. 410 F.3d 256, 263 (5th Cir. 2005).

Cantor and Commonwealth were allegedly in "active concert" with each other in relation to the funds of the plaintiff-investors because it is alleged that Cantor sold approximately $740

million worth of Collybus notes to Commonwealth for about $350 million in cash. (Doc. 59 at 4). Thus, the allegations relating to the merits of the underlying dispute allege active concert in accord with *Assail*. The question before this Court, however, is whether the two parties were in active concert with each other with respect to the injunction. Unlike in *Assail*, the question presented here does not involve enjoining actions stemming from allegations on the merits. Instead, it involves a separate question of procedure. In that respect, the interests of Cantor and Commonwealth are adverse (and thus not in active concert) with respect to the injunction because Cantor is objecting to the injunction agreed to by Commonwealth.

In *Regal*, the Supreme Court held that the purpose of the active concert standard was to prevent defendants from carrying out illegal acts through "aiders and abettors." 324 U.S. at 13-14. But there is neither allegation nor evidence that Commonwealth is attempting to use Cantor to carry out acts contrary to the injunction. Rather, Cantor wants the Court to rule on its motion to dismiss in order to avoid litigating the question anew in Delaware or waiting until the bankruptcy's resolution to litigate it here. This does not fit the paradigm contemplated by Rule 65, *Regal*, or *Assail*, and therefore Cantor is not bound by the injunction entered by the Delaware bankruptcy court.

As a necessary concomitant, the plaintiffs are likewise not bound by the injunction to the limited extent that they may, consistently with the injunction against prosecuting claims against *the funds*, defend against Cantor's motion to dismiss the claims raised against it.

5

III.

Accordingly, it is ORDERED that the Report and Recommendation of the magistrate judge (Doc. 78) is hereby APPROVED and ADOPTED.

It is further ORDERED that the Notice of Preliminary Injunction (Doc. 79) does not affect defendant Cantor Fitzgerald & Co., nor does it prevent plaintiffs from litigating questions raised by Cantor's anticipated motion to dismiss.

Signed in Baton Rouge, Louisiana, on June 21, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**