UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSEPH N. BROYLES, ET AL.

VERSUS

CANTOR FITZGERALD & CO., ET AL.

CIVIL ACTION

NO. 10-854-JJB-SCR

**THIS APPLIES TO CIVIL ACTION NO. 3:10-CV-00857-JJB-SCR**

**RULING ON MOTION TO DISMISS**

Before this Court are several Motions to Dismiss Plaintiffs' Second Amended Complaint. The first is the Motion to Dismiss by J.P. Morgan Clearing Corp. ("JPM Clearing") (doc. 191), followed by Opposition (doc. 229) and Reply (doc. 249) briefs. The second is the Motion to Dismiss by J.P. Morgan Securities, L.L.C. ("JPM Securities") (doc. 192), followed by Opposition (doc. 230) and Reply (doc. 250) briefs. The third is the Motion to Dismiss by seven Defendants, Stone & Youngberg L.L.C., Stifel Financial Corporation, Stifel, Nicolaus & Company, Inc., Kenneth Williams, Mitchell Gage, Jack Turner, and Anthony Guaimano, collectively the "S&Y Parties" (doc. 197), followed by Opposition (doc. 244) and Reply (doc. 256) briefs. This Court previously issued a ruling finding that the Court lacks personal jurisdiction over Williams, Gage, and Turner. Therefore, with regard to the Motion to Dismiss filed on behalf of the seven defendants, the Court will only consider it as to the four remaining Defendants. Additionally, the fourth is the Motion to Dismiss by Michael Jennings, who adopted the arguments made by the S&Y Parties, in his Motion to Dismiss (doc. 201), followed by Opposition (doc. 232) and Reply (doc. 257) briefs. Finally, the fifth is the Motion to Dismiss Charles Schwab & Co., Inc. ("Schwab") (doc. 199), followed by Opposition (doc. 231) and Reply (doc. 253) briefs. This ruling is issued *in seriatim*.

## FACTUAL ALLEGATIONS

Commonwealth Advisers, Inc. ("Commonwealth") and its CEO Walter Morales ("Morales") solicited Plaintiffs to invest in one or more "pooled asset" hedge funds that were created and controlled by Commonwealth. (Doc. 59 at 10). Plaintiffs collectively invested millions to acquire a membership interest in these funds, which were supposed to each have individual investment strategies, but the plaintiffs allege that all the funds had essentially the same investment strategy of investing in collateralized debt obligations (CDO) (referred to as "Collybus notes"), which were created by Cantor Fitzgerald & Co. ("Cantor"). (Doc. 59 at 11).

Plaintiff, Joseph Broyles, filed two suits, which this Court has consolidated. The first, No. 10-854, a suit filed on September 16, 2010, and removed to this Court, contains class allegations by Plaintiff-Investors claiming they were harmed by misrepresentations and breaches of fiduciary obligations related to decisions made by Morales and Commonwealth about the investment accounts. However, the motions considered herein relate to the action, No. 10-857, filed by the Plaintiff-Funds on November 8, 2010. The action asserts that the managers of the funds breached their fiduciary duty to their shareholders by investing in the Collybus notes and, as a result, received improper financial benefits from Cantor even though the investments harmed shareholder interests. (No. 10-857, doc. 1-6 at 31).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Davis v. Bellsouth Telecomm.*,

2012 WL 2064699, at *1 (M.D. La. June 7, 2012) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)).

All claims of fraud must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) by "stat[ing] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b). As the plaintiff notes, what constitutes the "particularity" necessary to satisfy the pleading standard of Rule 9(b) will vary depending on the facts of each case. (Doc. 244 citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)). "[W]here the alleged fraudulent scheme involved numerous transactions that occurred over a long period of time, courts have found it impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct." *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004).

## **CLAIMS FOR RELIEF**

### I. Fraud and Conspiracy to Commit Fraud

Plaintiffs alleged, with regard to the defendants at issue in this ruling, that Stone & Youngberg, Jennings, and Guaimano engaged in a "fraudulent conspiracy" that involved such actions as "manipulation of client accounts, misrepresentations or a suppressions of the truth made with the intention to obtain an unjust advantage for their own benefit and to cause a loss to the CA Funds." (Doc. 185 at 147). Plaintiffs allege that Stone & Youngberg, Jennings, and Guaimano "knowingly and willingly conspired with and aided Commonwealth's fraud by…" (a) selling RMBS to the Collybus CDO on behalf of Commonwealth at "overstated prices" giving the impression of a "true sale" despite the fact that Commonwealth had "unilaterally set the price levels for both Stone & Youngberg's purchase and the subsequent sale to the CDO," (b) selling Countrywide bonds to Commonwealth and then the Collybus CDO at prices which "both parties

3

knew were inflated," (c) selling and buying bonds, particularly the C, D, and equity tranches of Collybus, to and from the CA Funds at "pre-arranged prices unilaterally set by Commonwealth…when market conditions, ratings downgrades and other factors made plainly clear to any reasonable market participant that such prices were inflated," (d) aiding Commonwealth's scheme by (1) "purchasing and selling securities at values far below those at which Commonwealth carried the same bonds on the Core Fixed funds' books, in order to hide losses in some of the CA Funds," (2) providing, to Commonwealth's auditors, valuation consultants and others, false and misleading verifications as to the accuracy of securities valuations despite never having taken steps to confirm prices itself, (3) lying to the SEC by stating that Stone & Youngberg trading desk had valued securities when it had not, (4) intervening as an intermediary in prearranged trades with CA Funds in order to give the trades "the false appearance of arms-length market transaction instead of impermissible cross-trades." (Doc. 185 at 150-151).

According to the second amended complaint, Guaimano handled trades with CA Funds, namely those at issue herein, during his employment with Stone & Youngberg. Additionally, Guaimano travelled to Baton Rouge to meet with Morales and other Commonwealth employees. (Doc. 185 at 15). Jennings worked as the Vice President over fixed income sales, primarily to institutional clients, like the CA Funds. (Doc. 185 at 14). Jennings also travelled to Baton Rouge to meet with Morales and other Commonwealth employees. (Doc. 185 at 14).

In its Motion to Dismiss, the Stone & Youngberg parties claim that the Funds fail to allege critical elements of fraud (doc. 197-1) and that Plaintiffs allege no factual basis to support a "conscious agreement" or agreement to commit wrongdoing among the defendants, as is necessary to establish a conspiracy. (Doc. 197-1 at 11). There is no allegation that Stone &

Youngberg parties misrepresented facts, but instead the allegation is made as to Commonwealth's misrepresentation.

In opposing the Stone & Youngberg parties' Motion to Dismiss, Plaintiffs claim it would be impractical for them to plead specifics with respect to each and every instance of fraudulent conduct. (Doc. 244 at 13). Plaintiffs rely on several cases as authority for more generalized accusations sufficing when there are claims of a larger fraudulent scheme, none of which are authoritative in this jurisdiction.[1] Plaintiffs urge that Stone & Youngberg parties are ignoring the allegations that each individual provided assistance and encouragement to Commonwealth. Plaintiffs urge that they are merely required to allege "assistance or encouragement…of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of conspiracy. (Doc. 244 at 21, citing *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553, 557 (5th Cir. 1995)). Plaintiffs allege the following in support of each element of fraud: (1) Stone & Youngberg misrepresented facts regarding nature of the fraudulent transactions by Commonwealth when it gave the false impression that an independent third party placed its capital at risk by way of an independent evaluation (doc. 244 at 25-26); (2) Stone & Youngberg consciously deceived the Funds regarding the nature of fraudulent transaction by failing to disclose Stone & Youngberg's opportunity to unload its troubled Countrywide bonds from its books and to make "easy money" through the makeup on the resale price (doc. 244 at 27); (3) Plaintiffs relied on the misrepresentations by Stone &Youngberg when Commonwealth was able to accomplish "these detrimental transactions." (Doc. 244 at 28-29).

In its Reply, Stone & Youngberg agree that *Chrysler Credit Corp.* provides guidance on what the CA Funds must allege in order for Plaintiffs to claim a conspiracy to commit fraud. (Doc. 256 at 9, citing *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553, 557 (5th Cir.

---

[1] *Ford Motor Co.*, 532 F.3d 496, 506 (quoting *Bledsoe*, 501 F.3d at 310-11).

1995)). Plaintiffs point to the second amended complaint as specifically alleging the involvement of Jennings as salesman of record for each trade and as receiving commission for his participation and of Guaimano as the trader of record on several of the cross trades. (Doc. 244 at 24-25, n. 63). Plaintiffs allege that Guaimano repeatedly "made everyone aware that the purchase of the Countrywide Bonds was intended to serve as a kickback for S&Y's participation." (Doc. 244 at 23).

Sufficient facts have been pled regarding claims of fraud and conspiracy to commit fraud, both tort-based claims. Motions to deny all claims based in fraud for failure to meet the heightened pleading standard for fraud will be **DENIED**.

## II. Conspiracy to Breach Fiduciary Duty

This Court previously ruled that breach of fiduciary duty only occurs in contract and liability for conspiracies involving tortious conduct does not extend to breach of fiduciary duty.[2] Therefore, the Motions to Dismiss all claims of conspiracy to breach fiduciary duty will be **GRANTED**.

## III. Aiding and Abetting the and Breach of Fiduciary Duty

### *Conflicts of Law Analysis*

Plaintiffs argue their claims of breach of fiduciary duty and aiding and abetting the breach of fiduciary duty under Delaware law. Defendants all argue that it is Louisiana law that should govern these claims. All parties agree that the conflicts of law analysis of Louisiana, the

---

[2] *See* doc. 111 at 21 where this Court previously ruled on the cause of action for conspiracy to breach fiduciary duty:
Under Louisiana's conspiracy statute, "[h]e who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." La. Civ. Code art. 2324(A). "[U]nder Louisiana law, a breach of fiduciary duty only arises in contract…[and a] cause of action for conspiracy to breach a fiduciary duty lacks an essential element – an underlying intentional tort and must fail." *Louisiana v. Guidry*, 489 F.3d 692, 707 (5th Cir. 2007) (quotations omitted). As this Court has explained, Louisiana law "regarding liability for conspiracies involving tortious conduct and does not extend to alleged breaches of fiduciary duty." *Matthews v. Bancorpsouth Bank*, 2010 WL 797790, at *8 (M.D. La. 2010).

forum state, determines the applicable substantive law. Breach of fiduciary duty claims are contractual claims. Louisiana Civil Code article 3537 provides that "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." The Fifth Circuit, when previously considering this Louisiana conflicts of law provision, directed the court to determine which state's policy would be most impaired by considering (1) pertinent contacts of each state to the parties and the transaction, (2) the contract's nature, type, and purpose, and (3) which state's policies would be most seriously impaired if its law were not applied as well as other policy considerations. (Doc. 191-1 at 5, citing *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 488 (5th Cir. 2001)).

Plaintiffs conclude that Delaware laws would be most seriously impaired if not applied in a dispute between J.P. Morgan (Delaware corporation), Stone & Youngberg (California LLC), Jennings, and Guaimano (all California domiciliaries), Stifel Financial Corp., which became the parent company of Stone & Youngberg (Delaware corporation), Stifel Nicolaus & Co., who is the FINRA registered broker-dealer licensed to do business in Louisiana (Missouri corporation), Schwab (California corporation) and the onshore CA Funds (Delaware LLC). Plaintiffs rely on Delaware case law for support: "[w]hen the claim against a third-party is that it was knowingly complicitous in a breach of fiduciary duty against a Delaware entity, Delaware's interest is paramount." (Doc. 229 at 26 citing *Shandler v. DLJ Merch. Banking Inc.*, CIV.A. 4797-VCS, 2010 WL 2929654 at *19 (Del. Ch. July 26, 2010)(holding that Delaware law applied to claim for aiding and abetting breach of fiduciary duty because Ohio law did not recognize such a cause of action).

Defendants conclude that it is the policies of Louisiana that would be most seriously impaired if its own laws were not applied. (Doc. 191-1 at 4 and doc. 197-1 at 8). The CA Funds

7

have their principal place of business in Louisiana, the breach of fiduciary duty that Plaintiffs argue was aided and abetted by Defendants was allegedly committed by two Louisiana domiciliaries, Commonwealth and Morales (doc. 191-1 at 5), and Plaintiff-Funds, in their first amended complaint, claimed that a "substantial portion of the acts giving rise to these claims occurred in Louisiana." (Doc. 40). The primary pertinent contacts of the parties and events giving rise to the dispute, namely the place of conduct and injury, are nearly all Louisiana. Plaintiffs themselves allege that the principal place of business of each of the CA Funds was Baton Rouge. (Doc. 185 at 12). The key investors in the Funds are all entities created under Louisiana law. (Doc. 197-1 at 8).

Weighing the facts alleged, this Court concludes that Louisiana law applies to the aiding and abetting of and the breach of fiduciary duty claims as alleged against all Defendants herein. The Court does recognize Plaintiffs' arguments under the "internal affairs doctrine" as another conflicts of law principle. (Doc. 244 at 14). However, arguments under the "internal affairs doctrine," insofar as they conflict with the Louisiana conflicts of law analysis, are tangential and do not control these claims.

This Court has ruled before that aiding and abetting the breach of a fiduciary duty is not a cause of action recognized in Louisiana. Therefore, the Motions to Dismiss the claims of aiding and abetting the breach of a fiduciary duty will be **GRANTED**.

The J.P. Morgan parties' and Schwab's Motions to Dismiss breach of fiduciary duty claims are unopposed and therefore will be **GRANTED**.

Plaintiffs responded only to Stone & Youngberg Parties' Motion to Dismiss the breach of fiduciary duty claims.

### *Stone & Youngberg and its Representatives - Breach of Fiduciary Duty*

Stone & Youngberg, as a broker dealer registered with the SEC and as a member firm of FINRA (Financial Industry Regulatory Authority), is subject to many federal rules governing investment advisor conduct and business practices, as reflected in similar rules adopted by the FINRA.[3] (Doc. 185 at 159). Similarly, the registered representatives of Stone & Youngberg, namely, Jennings and Guaimano, were subject to the same rules and regulations. *Id*. Brokerage firms, such as Stone & Youngberg, or their registered representatives had customer relationships with Plaintiffs and were involved in handling transactions involving Plaintiffs' accounts. (Doc. 185 at 152). Plaintiffs' allegations in support of their fraud claims against Stone & Youngberg above are also asserted as support for breach of fiduciary duty claims. Additionally, Plaintiffs allege the following acts by Stone & Youngberg breached the fiduciary duty allegedly owed to the CA Funds: failing to fulfill its obligation to "know its customer" by misunderstanding the limits of Commonwealth's authority to act on behalf of the funds, such limits contained in the PPMs, Commonwealth Form ADV and Commonwealth's Compliance Manual; aiding and abetting of Commonwealth's *ultra vires* acts in contravention of restrictions set forth in CA Funds' PPMs, Commonwealth Form ADV and Commonwealth's Compliance Manual; engaging in and aiding and abetting transactions in violation of SEC rules, including transfers of securities between funds; failing to achieve "best execution" by engaging in pre-arranged buy-sell transaction between CA Funds at prices unilaterally set by Commonwealth without exposing the securities to the market to ensure fair prices are obtained; violating the "Three Quote Rule" by failing to consult any other broker-dealers in the transactions with the CA Funds; selling Countrywide bonds at knowingly inflated prices to Commonwealth; failing to enact and maintain a supervisory system reasonably designed to assure compliance with securities laws and industry standards; engaging in transactions that were unsuitable for the CA Funds and inconsistent with

---

[3] FINRA functions as the Federally-licensed self-regulatory organization for the regulation of broker dealers.

their stated investment objectives and where it was not reasonable to rely upon Commonwealth to ensure the propriety of the transactions; engaging in transactions involving excessive risks that were not adequately disclosed, on behalf of the CA Funds, where it was not reasonable to rely upon Commonwealth to ensure the propriety of the transactions. (Doc. 185 at 159-160). Plaintiffs further allege that Jennings and Guaimano are liable, *in solido*, with Stone & Youngberg for their respective participation in the above breaches of fiduciary duties by Stone & Youngberg. (Doc. 185 at 160).

Stone & Youngberg alleges that it, as a stockbroker, owes no fiduciary duty under Louisiana law. In fact, it cites to Louisiana case law that lists several relationships that do impose fiduciary obligations. (Doc. 197-1 at 13 citing *Wadsworth v. ABC Ins. Co.*, 732 So. 2d 56, 58 (La. Ct. App. 1998), *writ denied*, 742 So.2d 558 (La. 1999). In its Opposition, the plaintiffs cite to the very case relied on by Stone & Youngberg: "Louisiana jurisprudence has acknowledged the existence of fiduciary obligations involving attorneys, ***stockbrokers***, trustees, usufructuaries, executors, administrators and directors and officers of a corporation." (doc. 244 at 30, n. 76 citing *Wadsworth*, 732 So. 2d at 58 (emphasis added)).

Sufficient authority has been cited establishing that a fiduciary relationship may be owed by Stone & Youngberg to the CA Funds. The facts alleged in the second amended complaint and cited to in Plaintiffs' Opposition, as noted above, are alleged with sufficient particularity that the Plaintiffs' claim for breach of fiduciary duty has been sufficiently pled. Stone & Youngberg Parties' Motion to Dismiss the breach of fiduciary duty claim will be **DENIED**.

**IV.    Violations of Louisiana Securities Law and Delaware Securities Act**

Under each state's respective statutes, it is unlawful for a person to sell or purchase security by means of an untrue statement of material fact or omission of material fact. (Doc. 185

at 167, citing La. R.S. 51:701 *et seq*. and 6 Del.C. §73-605). Plaintiffs urge that they are entitled to damages under these acts because (1) Defendants made a false or misleading statement of a material fact or failed to state a material fact necessary in order to make the statement not misleading, (2) Plaintiffs did not know of the untruth or omission, and (3) Defendants knew or, in the exercise of reasonable diligence, could have known of the untruth or omission. (Doc. 185 at 167).

Plaintiffs allege that Stone & Youngberg and its representatives made several false and misleading statements, as well as, concealed numerous material facts in connection with the various sales of securities. (Doc. 185 at 167-170). Plaintiffs allege that Stone & Youngberg and their representatives knew or, in exercising reasonable diligence, could have known of the untruth or omission. (Doc. 185 at 170). Plaintiff-Funds could not have known of the various misrepresentations and omissions as Commonwealth, with the assistance of Stone & Youngberg and its representatives, concealed relevant information. (Doc. 185 at 170).

Under Louisiana Securities Law, La. Rev. Stat. § 51:714, if a person is considered to have violated Section 712(A), the security buyer "may sue in any court to recover the consideration paid in cash or, if such consideration was not paid in cash, the fair value thereof at the time such consideration was paid for the security…less the amount of any income received thereto" and interest, all taxable court costs, and reasonable attorney's fees. Delaware Securities Act at 6 Del.C. §73-605 provides that the buyer or seller of any security "may sue either at law or in equity to recover the consideration paid for the security, together with the interest at the legal rate from the date of payment costs, and reasonably attorney's fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security." Each state's law extends liability to every director or dealer or

salesman, who materially aids in the sale, unless the nonseller or nonbuyer, who is so liable, sustains the burden of proof that the person did not know and, in exercise of reasonable care, could not have known of the existence of the facts by reason of which the liability is alleged to exist. (Doc. 185 at 171).

Plaintiffs point to the following allegations of fact: (a) Jennings and Guaimano allegedly participated in the transactions at issue; (b) J.P. Morgan and Schwab, as the CA Funds' Prime Brokers, materially participated in the sales complained of by transferring securities, clearing trades, and wiring funds making them similarly liable under La. R.S. 15:714(B) and Section 73-605(b) of the Delaware Securities Act; (c) Guaimano was employed by Stone & Youngberg and assisted in sale of securities to CA Funds and, according to his own testimony, acted as a salesman in connection with transactions by communicating directly with Commonwealth to discuss securities being offered.[4]

Because there is no actual conflict between Delaware and Louisiana securities law, the Court will apply the law of Louisiana.[5]

## Louisiana Securities Act

J.P. Morgan (doc. 191), Stone & Youngberg (doc. 197-1), and Schwab (doc. 199) each filed a Motion to Dismiss the claims for violations of Louisiana Securities Act for failure to state a claim.

### *Primary Liability - Schwab*

Initially, Schwab urges that Plaintiffs fail to allege that Schwab was a "seller" to the Funds. The law imposes direct liability on sellers, and merely participating in events leading up

---

[4] The plaintiffs also claim that Guaimano was not registered as a salesman during his Stone & Youngberg employment in violation of La. R.S. §§51:703 and 51:712(A). It is also unlawful under La. R.S. Ann. §51:712.
[5] The fact that Delaware has a three year statute of limitations is immaterial according to plaintiffs who urge they are timely even under Louisiana's two year statute of limitations (doc. 244 at 18, n. 48).

to the transaction does not suffice to make Schwab a seller. (Doc. 199-1 at 22, citing *Solow v. Heard McElroy & Vestal*, 7 So. 3d 1269, 1280 (La. App. 2d Cir. 2009)). Schwab also argues that Plaintiffs do not allege sufficient facts to state a claim under Louisiana Securities Law.

To support such a claim, Plaintiffs must allege (1) that defendant made a misrepresentation or omission, (2) of a material fact, (3) that the plaintiff did not know of, and (4) that the defendant knew or, in the exercise of reasonable care, could have known of. *Ponthier v. Manalla*, 951 So. 2d 1242, 1255 (La. App. 5 Cir. 2007). Schwab is correct that Plaintiffs' mere allegations that Schwab was aware of "red flags" are not specific allegations. These allegations fail to identify any misstatement or omission made by Schwab and do not identify any specific purchases of securities. (Doc. 199-1 at 22-23).

Schwab's Motion to Dismiss the primary liability claims under Louisiana Securities Law will be **GRANTED**.

### *Primary Liability – Stone & Youngberg*

Similarly, Stone & Youngberg urges that Plaintiffs fail to allege that Stone & Youngberg Parties were "sellers," a necessary requirement to establish primary liability under Louisiana Securities Law. (Doc. 197-1 at 17).

Plaintiffs made an effort to argue that Stone & Youngberg was a "seller" of securities, and therefore a primary violator, by means of its omissions of material facts. (Doc. 244 at 32). In fact, Plaintiffs allege that Stone & Youngberg was the one "who passe[d] title in the security to the buyer for value" to the CA Funds on numerous instances. (Doc. 244 at 33, citing *Pinter v. Dahl*, 486 U.S. 622, 642, 108 S. Ct. 2063, 2076, 100 L. Ed. 2d 658 (1988)).[6]

---

[6] Plaintiffs argue that Stone & Youngberg could have known of the prearranged trades had they conducted an investigation of the value of securities (doc. 244 at 34).

13

Considering the facts alleged, Stone & Youngberg's Motion to Dismiss the primary liability claims under Louisiana Securities Law will be **GRANTED**.

*Secondary Liability – J.P. Morgan, Schwab, and Stone & Youngberg Parties*

J.P. Morgan asserts that it did not "materially participate" in the transactions at issue. Louisiana courts have not addressed what constitutes "material participation" under §714(B) of Louisiana Securities Law. However, J.P. Morgan analogizes what is likely meant by Louisiana Securities Law, which tracks the Uniform Securities Acts of 1956 §410(b) and Acts of 2002 §509(g).

The Court observes that the comment to the 2002 version indicates that "the performance by a clearing broker of the clearing broker's contractual functions – even though necessary to the processing of the transaction – without more would not constitute material aiding or result in liability under this subsection." Uniform Securities Act §509 (2002), comment 11. Other state's courts, whose state securities laws also closely track the Uniform Securities Act, have followed comment 11. (Doc. 191 at 19). In several cited cases, the clearing brokers were not found liable for "perform[ing] a simple, albeit necessary, accounting function in order to process the orders." (Doc. 191 at 20, citing *Carlson v. Bear Stearns & Co., Inc.*, 906 F.2d 315 (7th Cir. 1990)). J.P. Morgan argues that, while the CA Funds make general allegations that "the Defendants," as a group, made false or misleading statements, none of those allegations are specific allegations towards J.P. Morgan. (Doc. 191 at 21). The allegation of J.P. Morgan's limited involvement in the transactions was also done entirely under the directions of others. (Doc. 191 at 21).[7]

---

[7] In *Heck v. Buhler*, 2013 WL 3341057 (M.D. La. July 2, 2013) the court was considering primary liability under §714(A), as opposed to liability under §714(B), as is at issue here. However, J.P. Morgan urges that *Heck* is still providing guidance because §714(B) provides for joint and several liability of every dealer who participates in any material way in the sale with the person directly liable under §714(A). In *Heck* the defendants were not found solidarily liable when the court evaluated their liability under La. C.C. art. 2324, which requires proof of an agreement as to intended outcome or of conspiracy (doc. 249 at 12). Therefore, J.P. Morgan argues that "material participation" under Louisiana Securities Law must rise to the level of proof of conspiracy or agreement as to

Plaintiffs argue that J.P. Morgan's participation was "knowing and culpable." (Doc. 229 at 12). Plaintiffs argue that "material aid" is equivalent to "substantial assistance" which can take many forms such that "executing transactions, even ordinary course transactions, can constitute substantial assistance under some circumstances." (Doc. 229 at 13, citing *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005)). Plaintiffs urge that courts have consistently found "direct contract with the purchaser is unnecessary." (Doc. 244 at 36, citing *Sterling Trust Co. v. Adderley*, 168 S.W.3d at 845). Plaintiffs then urge that what constitutes "materially aided" is a question of fact to be considered "once the parties have had an opportunity to adduce their evidence." (Doc. 229 at 13, citing *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 600 (S.D. Ind. 2000)). Plaintiffs specifically point to the original purchase of the Collybus notes by the CA Funds and the purchase of the A2 tranche of Collybus as the transactions in which S&Y is liable is a material participant.

As for secondary liability, Schwab's arguments mirror those of J.P. Morgan. The only additional point Schwab makes is that the definition of "material" aid or participation is a question of law (doc. 199-1 at 25).[8] Plaintiffs assert the same arguments made in response to J.P. Morgan's Motion to Dismiss.

The common question raised by Stone & Youngberg, J.P. Morgan and Schwab is what constitutes "material" participation for purposes of Louisiana Securities Law. (Doc. 197-1 at 20). Plaintiffs do not dispute that Stone & Youngberg did not have direct contact with the Funds, but instead urge that direct contact is not required for "material participation." Plaintiffs cite to case law that, as Stone & Youngberg points out, is fundamentally distinguishable since the defendants

---

outcome. Additionally, it argues that other courts evaluating state laws mirroring §714 hold that "material participation" requires participation that influences the decision of the purchaser or a causal connection between the harm and alleged conduct (doc. 249 at 12).

[8] *See Benton v. Merrill Lynch*, No. 3:06-00105, 2007 WL 735696 at *4 (E.D. Ark. Mar. 7, 2007)

in those cases did, in fact, have direct contacts with the plaintiffs and/or were found capable of influencing plaintiffs' purchasing decision, which is not the case here. (Doc. 256 at 15).

The Court finds that Plaintiffs have failed to state a claim of "material participation" under Louisiana Securities Law. The Motions to Dismiss claims of secondary liability under Louisiana Securities Law, as filed by J.P. Morgan, Schwab, and Stone & Youngberg Parties, will be **GRANTED**.

V. **Negligence Claim against Stone & Youngberg Parties**

Plaintiffs rely on many industry-wide standards, such as those provided by the FINRA (Financial Industry Regulatory Authority), to indicate what level of due diligence is expected of a broker-dealer to its customers when conducting trades. (Doc. 185 at 174-75). As noted by Plaintiffs, there are sufficient facts pled to satisfy the plausibility standard for a Motion to Dismiss under federal rule 12(b)(6) and for the negligence claim against Stone & Youngberg to survive the pleading stage. (Doc. 244 at 43-44).

Stone & Youngberg's Motion to Dismiss the negligence claim will be **DENIED**.

VI. **Fiduciary Shield Doctrine**[9]

**Stifel and Stone & Youngberg**

Stone & Youngberg parties move on the grounds of the fiduciary shield doctrine, as recognized by Louisiana courts, to argue that is cannot be liable for the "wrongful conduct by the S&Y Individual Parties **taken separate and apart from their roles at the company**." (Doc. 197-1 at 37-39 citing *Roth v. Voodoo BBQ, LLC*, 964 So. 2d 1095, 1098 (La. App. 4th Cir. 2008)

---

[9] The issue of piercing the corporate veil was raised in the complaint when Plaintiffs assert that Stifel assumed the liabilities of Stone & Youngberg upon acquisition. To the extent Stifel has assumed such liabilities, piercing the corporate veil is unnecessary. Stifel, as one of the Stone & Youngberg Parties, does not raise a veil-piercing argument in its Motion to Dismiss.

(noting that the only exception to the fiduciary shield doctrine is for acts taken "outside one's capacity as a member, manager, employee, or agent of the limited liability company")).

Plaintiffs' Opposition argues that the fiduciary shield doctrine "is not concerned with liability…[i]t is concerned with jurisdiction." (Doc. 244 at 70 citing *MCR Mktg., L.L.C. v. Regency Worldwide Servs., L.L.C.*, No. 08-1137, 2009 WL 728523 at *6 (W.D. La. Mar. 18, 2009)). Further, the Louisiana Supreme Court has explained that "[d]espite the fact that [Defendant's] actions may have been done solely in a corporate capacity, Louisiana, as a means of protecting its citizens, should not permit a director's wrongdoing in the sale of securities to escape personal responsibility via a corporate shield." (Doc. 244 at 71, citing *Wireless Network, Inc. v. U.S. Telemetry Corp.*, 06-1763 (La. 4/11/07), 954 So. 2d 120, 129).

Stone & Youngberg Parties' argument is a matter for factual determination and is inappropriate for determination in a Motion to Dismiss. Stone & Youngberg Parties' Motion to Dismiss claims based on the fiduciary shield doctrine will be **DENIED**.

### J.P. Morgan Securities

J.P. Morgan Securities moves to dismiss on the basis it cannot be held liable for acts of the wholly owned subsidiary, J.P. Morgan Clearing.[10] In Plaintiffs' Opposition, they assert that they do not seek to pierce the corporate veil, but instead to find liability against J.P. Morgan Securities on its own behalf.

---

[10] Parent companies, such as J.P. Morgan Securities, generally have no duty to control the actions of the subsidiary, here, J.P. Morgan Clearing (doc. 192 at 4 citing *Bujol v. Entergy Servs. Inc.*, 922 So.2d 1113, 1127 (La. 2004) citing *Joinder v. Ryder System, Inc.*, 966 F.Supp. 1478, 1483 (C.D. Ill. 1996)). The plaintiffs would have to demonstrate that the parent company knew of the subsidiary actions and approve of them in order to find the parent liable (doc. 192 at 4 citing *Andry v. Murphy Oil U.S.A., Inc.*, 935 So.2d 239, 249-50 (La. App. 4 Cir. 6/14/2006)). The allegations by plaintiff against J.P. Morgan entities are based on improper clearing by Bear Stearns Securities Corp. and, later, J.P. Morgan Clearing Corp. (doc. 192 at 5).

Plaintiffs argue that both J.P. Morgan Clearing and J.P. Morgan Securities are liable because the CA Funds' account statements were represented by J.P. Morgan Securities and then cleared through J.P. Morgan Clearing (doc. 230 at 2).

The Court concludes that this is not appropriate material for a Motion to Dismiss. J.P. Morgan Securities' Motion to Dismiss claims based on a corporal veil will be **DENIED**.

VII. **ERISA Claims against Stone & Youngberg for Breach of Fiduciary Duty**

*Standing*

Plaintiffs have sufficiently pled standing to raise ERISA claims based on their claim that more than 25% of the equity interests in the Offshore Funds were held by benefit plan investors as defined in ERISA § 3(42), 29 U.S.C. § 1002(42). Arguments by Defendants to dismiss ERISA claims for Plaintiffs' alleged lack of standing will be **DENIED**.

*Preemption of Claims by Offshore Funds*

Defendants attempt to have all state law security claims dismissed as preempted by ERISA. However, in order for ERISA to preempt, the parties must point to the state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Aetna Health Inc. v. Davilia*, 542 U.S. 200, 208, 124 S.Ct. 2488, 2495, 159 L. Ed. 2d 312 (2004)). Further, ERISA allows "state laws 'which regulate insurance, banking, or securities' to survive ERISA preemption." (Doc. 231 at 29, citing *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 275 (5th Cir. 2004)(quoting 29 U.S.C.A. § 1144)). Courts have found that even these state law claims can sometimes still be preempted "if they conflict with Congress's policy of providing 'exclusive federal remedies.'" The Court concludes that the parties have failed to sufficiently address this issue.

Sufficient facts have been pled for the ERISA claims to survive the pleading stage. (Doc. 231 at 27-28). Collectively, the Motions to Dismiss the ERISA claims for Plaintiffs' failure to state a claim will be **DENIED**.

### VIII. Prescription

To the extent arguments based in tort are raised, the general prescriptive period is Louisiana is one-year. Plaintiffs assert that their fraud claims are subject to a ten-year prescriptive period. (Doc. 244 at 55). Insofar as fraud claims arise under tort law, they are subject to the one-year prescriptive period according to article 3492 of the Louisiana Civil Code. (Doc. 256 at 21). However, arguments based in *contra non valentum* have been raised by the plaintiffs in response to these arguments of prescribed claims. To the extent the substance of these arguments are to be considered, it is not appropriate to consider them at the Motion to Dismiss pleading stage.

Therefore, Motions to Dismiss based on these claims having prescribed are **DENIED**.

### CONCLUSION

This Court has considered the Motions to Dismiss filed by JPM Clearing (doc. 191), JPM Securities (doc. 192), Stone & Youngberg Parties, as adopted by Jennings, (doc. 197), and Schwab (doc. 199). This Court also considered all responsive briefs filed by the Fund-Plaintiffs and the Defendants.

All Motions to Dismiss claims based in fraud for failure to meet the heightened pleading standard for fraud are **DENIED**. All Motions to Dismiss claims of conspiracy to breach fiduciary duty are **GRANTED**. All Motions to Dismiss the claim of aiding and abetting the breach of a fiduciary duty are **GRANTED**. J.P. Morgan parties' and Schwab's Motions to Dismiss breach of fiduciary duty claims are **GRANTED**. Stone & Youngberg Parties' Motion to Dismiss the

19

breach of fiduciary duty claim is **DENIED**. Schwab's Motion to Dismiss the primary liability claims under Louisiana Securities Law is **GRANTED**. Stone & Youngberg's Motion to Dismiss the primary liability claims under Louisiana Securities Law is **GRANTED**. Stone & Youngberg's Motion to Dismiss the control person claims under Louisiana Securities Law against the individual-defendants is **GRANTED**. The Motions to Dismiss claims of secondary liability under Louisiana Securities Law, as filed by J.P. Morgan, Schwab, and Stone & Youngberg Parties, are **GRANTED**. Stone & Youngberg's Motion to Dismiss the negligence claim is **DENIED**. Stone & Youngberg Parties' Motion to Dismiss claims based on the fiduciary shield doctrine is **DENIED**. J.P. Morgan Securities' Motion to Dismiss claims based on a corporal veil will be **DENIED**. Defendants' Motions to Dismiss ERISA claims for Plaintiffs' alleged lack of standing are **DENIED**. Defendants' Motions to Dismiss the ERISA claims for Plaintiffs' failure to state a claim are **DENIED**. Motions to Dismiss based on these claims having prescribed are **DENIED**.

Signed in Baton Rouge, Louisiana, on December 8, 2014.

                    **JUDGE JAMES J. BRADY**
                    **UNITED STATES DISTRICT COURT**
                    **MIDDLE DISTRICT OF LOUISIANA**