UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSEPH N. BROYLES, ET AL.

VERSUS

CANTOR FITZGERALD & CO., ET AL.

CIVIL ACTION

NO. 10-854-JJB-SCR

**THIS APPLIES TO CIVIL ACTION NO. 3:10-CV-00857-JJB-SCR**

**RULING ON MOTION TO DISMISS**

Before this Court is a Motion to Dismiss the First Supplemental and Amended Counterclaim ("FSAC") of Counterclaim-Plaintiff, J.P. Morgan Clearing ("JPM"). (Doc. 241). The Motion to Dismiss is filed by Counterclaim-Defendant, the CA Funds. In a prior ruling, this Court granted JPM leave to amend its original counterclaim in an attempt to save the claim for breach of the covenant of good faith and fair dealing from dismissal under Rule 12(b)(6). (Doc. 188).

In the prior ruling, this Court held that JPM relied upon sufficient allegations to state a claim for CA Funds breaching its contract. (Doc. 188 at 7). However, the salient issue presented by this Motion is whether JPM's amended counterclaim (doc. 210) sufficiently alleges that the CA Funds acted with malicious intent. This is necessary for the Court to find the breach of the duty of good faith and fair dealing counterclaim plausible and survives pleading stage.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint

as true and view them in the light most favorable to the plaintiff." *Davis v. Bellsouth Telecomm.*, 2012 WL 2064699, at *1 (M.D. La. June 7, 2012) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)).

## **DISCUSSION**

CA Funds claim that JPM's attempt to amend its allegation involves making "wholly unsupported, conclusory allegations that the CA Funds' intentionally failed to notify J.P. Morgan of the CA Funds' bankruptcy proceedings and intentionally concealed information about their potential claims against J.P. Morgan in order to deprive J.P. Morgan of the opportunity to file a claim in the bankruptcies." (Doc. 241-1 at 3 citing FSAC at 34). CA Funds, however, claim that JPM offers no factual support for its claim that CA Funds knew of potential claims against JPM during the bankruptcies or of purported contractual obligations to Bear Stearns (now JPM). (Doc. 241-1 at 3). Instead, CA Funds urge that JPM asserted entirely new allegations "tantamount to a claim that the CA Funds *fraudulently suppressed notice* to J.P. Morgan." (Doc. 241-1 at 4 (emphasis added)). Allegations of fraud must meet an even higher pleading standard, that of "particularity." Fed. R. Civ. P. 9(b). This new counterclaim of JPM, according to the Funds, is based "almost entirely…upon Plaintiffs' conduct in connection in the bankruptcies," yet JPM had the bankruptcy documents stricken as not central to JPM's claim. (Doc. 241-1 at 5 citing June 19, 2014 Ruling, Doc. 188 at 3). CA Funds claim that JPM provides no factual basis from which the Court could even infer that CA Funds had knowledge of any potential claims against JPM at time of bankruptcies. (Doc. 241-1 at 5). CA Funds were under different management and represented by different counsel during bankruptcy proceedings. (Doc. 241-1 at 6). There are no allegations that the previous and current sets of management conspiring to withhold notice, conceal claims, or otherwise intentionally suppress disclosures to JPM. (Doc. 241-1 at 6).

2

JPM, on the contrary, alleges that the Funds entered into several agreements with Bear Stearns where the Funds "represented and warranted that they were solely responsible for monitoring compliance with the Funds' internal restrictions, procedures, and the laws and regulations affecting the Funds' power, authority and ability to make trade and investments." (Doc. 258 at 3). The Funds agreed "to bear all liability related to the transactions Bear Stearns cleared" and that Bear Stearns was not liable for any damages, and Funds "waived all rights to recover damages." (Doc. 258 at 3). JPM terminated its relationship with the Funds effective August 8, 2008. (Doc. 258 at 3). Shareholders filed this suit in November of 2010 as a derivative action on behalf of the Funds asserting claims against other defendants, including some claims that were *related to* transactions which Bear Stearns allegedly cleared. (Doc. 258 at 3). A year later the Funds filed for the Chapter 11 reorganization. At this point, the Funds did not disclose any claim against JPM (Bear Stearns) in the bankruptcy proceedings nor did they list any claim against JPM as an asset of the Funds. JPM asserts that the CA Funds were aware of possible claims at the time of their bankruptcy filings. However, the Funds only asserted claims against JPM in the First Amended Complaint filed December 9, 2013. In response to the First Amended Complaint, JPM answered and filed its counterclaims against the Funds. The Funds then moved to dismiss the counterclaim because of an allege bankruptcy discharge that JPM alleges to have received no notice of. Further, the Funds desire for "specific facts" regarding their knowledge of claims against JPM is an issue of fact, not an issue of plausibility at the pleading stage, according to JPM. (Doc. 258 at 7).

JPM asserts that it has alleged sufficient facts to state a claim for breach of the duty of good faith and fair dealing, and cites to Fifth Circuit case law to support this assertion. Two parties, Delta and International Harvester (IH), reached a franchise dealer agreement for farm

and agriculture equipment. *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192 (5th Cir. 1992). The agreement included several grounds for terminating the agreement, none of which include IH total cessation of its business in the sale of its business to a competitor. Nevertheless, several years after the agreement, IH sold the entire business to a competitor. The competitor did not offer a new dealership agreement to Delta, and eventually the competitor gave notice to Delta that it was terminating the IH agreement. Delta sued both the competitor and IH for breach of the duty of good faith and fair dealing. *Id.* at 1196. While the district court dismissed the claims on summary judgment, the Fifth Circuit reversed. The Fifth Circuit found that when IH sold to the competitor it knew the transactions would result in the termination of IH dealers, like Delta, without cause. Further, the court found that IH deliberately structured the transaction so as to leave the terminated dealers, like Delta, with little or no recourse against either IH or the competitor. The Fifth Circuit found that IH breached its duty to act in good faith. *Id.* at 1204. Here, JPM draws a comparison to the case of *Delta Truck*. Like the defendants in *Delta Truck*, IH and the competitor, the Funds here "deliberately withheld information from J.P. Morgan, and assert their claims while claiming that J.P. Morgan has none – due to the Funds' omissions." (Doc. 258 at 8).

The Funds also assert that JPM has not sufficient pled the Funds' knowledge of contractual obligations with Bear Stearns (JPM). However, the Funds executed the agreements establishing such obligations. (Doc. 258 at 10). Further, when the derivative action was first filed in 2010, JPM asserts that the Funds knew then of "which transactions were at issue, had knowledge of who cleared the transactions, and would have known of potential claims against J.P. Morgan." (Doc. 258 at 10). The Funds, themselves, acknowledged that the investors

investigated before filing the derivate suit on the Funds behalf. (Doc. 258 at 10 citing Doc. 244 at 61).

As this Court has held, bad faith means "more than mere bad judgment or negligence and it implies the conscious doing of a wrong for dishonest or morally questionable motives." (Doc. 188 at 7 citing *Broyles v. Cantor Fitzgerald & Co.*, CIV.A. 10-854-JJB, 2014 WL 2769069 at *4 (M.D. La. June 18, 2014)(quoting *Volentine v. Raeford Farms of Louisiana, LLC*, 48,219 (La. App. 2. Cir. 8/24/13), 121 So. 3d 742, 753)). However, as JPM makes clear, their counterclaim is for breach of the duty of good faith and fair dealing under Articles 1983 and 1759, and is not one for bad faith performances of a contract under Article 1997. (Doc. 258 at 9). JPM claims the Funds' intentionally avoided their contractual obligations owed to JPM, and either intent or ill will is required for a good faith and fair dealing claim. (Doc. 258 at 9 citing *Westbrook v. Pike Elec., LLC*, 799 F.Supp.2d 665, 671 (E.D. La. 2011). JPM also rejects the Funds' assertion that fraud must be sufficiently pled when fraud is not an element of the claim of breach of the duty of good faith and fair dealing. (Doc. 258 at 9). Finally, whether the Funds had sufficient knowledge for a successful claim is a fact-intensive issue, inappropriate for a 12(b)(6) motion.

For the purposes of a Rule 12(b)(6) motion JPM has pled facts of the Funds' knowledge of possible claims against JPM and the Funds knowingly failing to assert such claims until late 2013, all suggesting the plausibility of malicious intent. The allegations by JPM suffice to make the counterclaim for breach of duty of good faith and fair dealing plausible and, therefore, sufficient to satisfy the pleading standard.

## **CONCLUSION**

This Court has considered the Counterclaim-Defendants' Motion to Dismiss the First Supplemental and Amended Counterclaim for Failure to State a Claim. (Doc. 241). The Court

5

has also considered the Counterclaim-Plaintiff's Opposition. (Doc. 258). There was no reply brief filed.

For the reasons stated above, the Motion to Dismiss is **DENIED**.

Signed in Baton Rouge, Louisiana, on December 8, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**