UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSEPH N. BROYLES, ET AL.

CIVIL ACTION

VERSUS

NO. 10-854-JJB-SCR

CANTOR FITZGERALD & CO., ET AL.

**THIS APPLIES TO CIVIL ACTION NO. 3:10-CV-00854-JJB-SCR**

**RULING ON MOTION TO DISMISS**

Before this Court is a Motion to Dismiss Plaintiff-Investors' Fifth Amended Complaint. (Doc. 184). Plaintiff-Investors include twelve individuals and three retirement systems. The motion was filed by three of the five Defendants, Stone & Youngberg LLC, Stifel Financial Corporation, and Stifel, Nicolaus & Company, Inc. (collectively "S&Y Parties"). (Doc. 193). This Court considered the motion and all responsive briefs.

**FACTUAL ALLEGATIONS**

Commonwealth Advisers, Inc. ("Commonwealth") and its CEO Walter Morales ("Morales") solicited Plaintiffs to invest in one or more "pooled asset" hedge funds that were created and controlled by Commonwealth. (Doc. 59 at 10). Plaintiffs collectively invested millions to acquire a membership interest in these funds, which were supposed to each have individual investment strategies. Plaintiffs allege that all the funds had essentially the same investment strategy of investing in collateralized debt obligations (CDO) (referred to as "Collybus notes"). (Doc. 59 at 11). Plaintiffs allege that S&Y Parties acted as major participants in Morales' scheme by providing Morales with a continuing stream of inflated price quotes for bonds and acting to facilitate the transfer of certain devalued bonds from accounts maintained by certain customers of Morales to the CDO. (Doc. 184 at 4). Plaintiff alleges that S&Y Parties

1

warehoused bonds that were going to be contributed to the CDO and conducted transactions at inflated values between Commonwealth and Commonwealth's clients. (Doc. 184 at 4). Once the CDO transaction was complete, Morales engaged in several other fraudulent transactions, with the assistance of S&Y Parties, intending to overstate the value of certain bonds and securities. (Doc. 184 at 5). The effect of Morales overstating the performance of the funds was two-fold: (1) investors would not try to redeem their seemingly successful investments and (2) investors would be encouraged to make additional investments based upon exaggerated reported returns. (Doc. 184 at 5). S&Y Parties are alleged to be knowing-participants because Morales' CDO agreed to purchase the distressed mortgage-backed securities bonds of S&Y Parties at grossly inflated prices. This purchase allowed S&Y Parties to avoid millions in losses and enjoy handsome commissions on such fraudulent transactions. (Doc. 184 at 5).

Plaintiff, Joseph Broyles, filed two suits, which this Court has consolidated. The first, No. 10-854, filed on September 16, 2010, and removed to this Court, contains class allegations against Commonwealth Advisors, Inc., Walter A. Morales, and S&Y Parties. Plaintiffs allege that Plaintiff-Investors were harmed by misrepresentations and breaches of fiduciary obligations related to decisions made by Morales and Commonwealth about their investment accounts. The second action, No. 10-857, was filed in the name of the Funds on November 8, 2010. The motion to dismiss at issue herein is with regard to the Plaintiff-Investor suit, No. 10-854.

## STANDARD OF REVIEW

S&Y Parties filed the motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). S&Y raised two principal arguments in support of its motion. First, S&Y Parties assert that Plaintiffs lack standing to bring a direct suit against S&Y Parties because (1) the injury they claim is one that must have affected the CA Funds as a whole, (2) the Funds have

asserted the same claims against the same Defendants, and (3) these claims asserted against S&Y Parties are derivative, not direct. (Doc. 193 at 2-3). Second, S&Y Parties assert that the Fifth Amended Complaint (doc. 184) does not assert a claim against S&Y Parties and fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which governs the pleading standards for claims based on fraud.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Davis v. Bellsouth Telecomm.*, 2012 WL 2064699, at *1 (M.D. La. June 7, 2012) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)). All claims of fraud must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) by "stat[ing] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b).

The movant generally bears the burden in a motion to dismiss. However, the burden rests with the party asserting standing to clearly allege facts demonstrating that is a "proper party to invoke judicial resolution of the dispute." *Krys v. Sugrue* (*In re Refco Inc. Securities Litigation*) No. 07-mdl-1902, 2010 WL 1375946, *6, *report and recommendation*, (S.D.N.Y. Feb. 3, 2010), entered 2010 WL 1404198 (S.D.N.Y. Mar. 31, 2010) (Rakoff, J.))

## **ANALYSIS**

Defendants argue that Plaintiffs lack constitutional standing, the requirements of which are (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent," (2) a "causal connection between the injury and the conduct complained of—the injury has to be fairly

traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and (3) the injury must be "likely" as opposed to merely "speculative." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Arizona Christian School Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011).

Both parties agree that whether the claims alleged by Plaintiffs against Defendants are direct or derivative affects whether Plaintiffs have standing. Defendants cite to this Court's prior ruling on a prior defendant's motion to dismiss. *Broyles v. Cantor Fitzgerald & Co.*, 2013 WL 1681150. The prior ruling was in response to the motion to dismiss of a prior-defendant, Cantor, as filed to dismiss the claims of these same Investor-Plaintiffs. *Id*. at 1, n. 1. Despite the complaint being filed by the Investor-Plaintiffs, this Court found that "the Funds are Delaware limited liability companies and Cayman Island companies and…Delaware law and Cayman law govern the issue of whether the claims asserted are direct or derivative." *Id*. at *6, citing *Smith v. Waste Management, Inc.*, 407 F.3d 381, 384 n. 1 (5th Cir. 2005). The Plaintiffs cite to the same Delaware approach for determining if a claim is derivative or direct that this Court relied on in its prior ruling. The Delaware approach instructed that "a court should look to the nature of the wrong and to whom the relief should go." *Id.* at 6, citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). Further, this Court found as a requirement that "the injury must be ***direct to the Plaintiffs*** and that the injury must be ***independent of any injury to the corporation***." *Id*. at *7 (emphasis added).

Defendants argue that the same types of claims alleged by Plaintiffs in the complaint are routinely found by courts to belong to the corporation, not the investors. (Doc. 193-1 at 7). Defendants urge that Plaintiffs do not have standing "because their injury is not personal and

4

individual." Plaintiffs in response do not contest this standard, but disagree about the claims Plaintiffs have alleged against Defendants. Plaintiffs argue that they were injured "when they made investment decisions in reliance on these fraudulent values," valuations allegedly made possible because of fraud and conspiracy by S&Y Parties, Morales, and Commonwealth. (Doc. 223 at 4). Plaintiffs urge that they are the "real victims of Morales and Commonwealth's valuation fraud." (Doc. 223 at 11). Plaintiffs' additional injury allegedly occurred when they made investment decisions in reliance on these fraudulent values. (Doc. 223 at 4). Plaintiffs argue that their injury is an additional ground for damages independent of injury to CA Funds, who "arguably benefited from Defendants' valuation fraud." (Doc. 223 at 5).

Defendants cite to a Louisiana Appeals Court ruling finding fraud claims brought by shareholders, comparable to those brought here, were derivative. *Crochet v. Cisco Systems, Inc.*, 847 So. 2d 252, 256 (La. App. 3d Cir. 2003), *writ denied*, 855 So. 2d 765 (La. 2003). The plaintiffs in *Crochet* brought an action against certain lenders for providing excessive loans and pressuring the company to use loans for the purchase of unfavorable assets, all of which caused a merger transaction to fail. *Id.* at 254. The court found that the shareholders lacked a "personal right to sue to recover for acts committed against, or causing damage to the corporation." *Id.* at 255-56. Defendants continue, in a footnote, to explore other similarities between Investor-Plaintiffs and the *Crochet* plaintiffs: The Louisiana appeals court emphasized that the plaintiffs did not have "any direct dealings with the [] defendants," which Defendants urge is also the case here. Investor-Plaintiffs never dealt directly with S&Y Parties, and make no allegation stating otherwise.

Plaintiff urges that they, as Investor-Plaintiffs, have a distinct and direct injury. (Doc. 223 at 5). Plaintiffs allege that S&Y Parties fraudulently overstated the values of certain assets, which

5

they allege caused a direct injury to Investor-Plaintiffs, not the Funds. (Doc. 223 at 6-7). Plaintiffs rely on an opinion applying New York law where the fraud was also alleged to be valuation fraud. The court for the Southern District of New York found the "principal wrong appears to have been a valuation fraud that injured plaintiffs, not the Funds." *Fraternity Fund Ltd. V. Beacon Hill Asset Mgmt., LLC*, 376 F.Supp.2d 385, 409 (S.D.N.Y. 2005). Plaintiffs urge that because the claims of fraud against S&Y Parties do include allegations of overstating the asset values, that *Beacon Hill* does support Plaintiffs' argument that the injuries alleged here are direct, not derivative.

Finally, Defendants' reply argues that Plaintiffs have abandoned their argument for compensatory damages based on Plaintiffs' opposition that focuses of rescissionary damages. (Doc. 247 at 5). Defendants interpret this as a concession on behalf of Plaintiffs that compensatory damages sought by Investors would create a risk of duplicative recovery if the CA Funds too recovered compensatory damages. If Plaintiffs do intend to pursue only claims for rescissionary damages against S&Y Parties, Defendants urge that such recovery is not possible against S&Y, who acted as an alleged third party to the fraudulent transactions at issue. (Doc. 247 at 6). In fact, under Louisiana law, the right to rescind a purchase or force rescission due to fraud extends only against the other party to the transaction, here that would not include S&Y Parties. (Doc. 247 at 6, citing La. Civ. Code art. 1958 cmt (c)). Further, Defendants argue that the "damages" Plaintiffs, if successful, would be entitled to under the Louisiana Civil Code are the same that the CA Funds would be entitled to against S&Y Parties. Reiterating the argument made in the Defendants' original motion to dismiss, they conclude that double recovery is inevitable if both the Investor-Plaintiffs and Fund-Plaintiffs proceed. (Doc. 247 at 6).

Investor-Plaintiffs attempt to allege an injury separate and distinct from that allegedly imposed on the Fund-Plaintiffs. Investors point to only their reliance on valuation fraud allegedly committed by S&Y Parties. However, fraud is one of the many claims alleged by Fund-Plaintiffs against S&Y Parties in the consolidated action. Plaintiffs fail to point to distinct injury that would not risk duplicative recovery if both sets of Plaintiffs succeeded with their claims. Defendants have sufficiently demonstrated a risk of double recovery, another principle that the standing requirement is meant to avoid. Therefore, the Investor-Plaintiffs have failed to satisfy their burden to prove that they have standing to sue the Defendants.

## CONCLUSION

This Court has considered the Motion to Dismiss filed by S&Y Parties (doc. 193), Investor-Plaintiffs' Opposition (doc. 223), and the Reply filed by S&Y Parties. This Court finds Investor-Plaintiffs have failed to prove that they possess standing to sue the S&Y Parties when these same claims are asserted against the Fund-Plaintiffs.

Therefore, the Motion to Dismiss the Investor-Plaintiffs' claims because of a lack of standing is **GRANTED**.

Signed in Baton Rouge, Louisiana, on December 8, 2014.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**