UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH N. BROYLES, ET AL. | * | CIVIL ACTION NO.: 3:10-CV-00854-JJB-SCR |
| | * | |
| VERSUS | * | |
| | * | |
| CANTOR FITZGERALD & CO., ET AL. | * | CONSOLIDATED WITH: |
| | * | CIVIL ACTION NO. 3-10-CV-00857-JJB-SCR |

* * * * * * * * * * * * * * * * * * * * * * * * *

**THIS APPLIES TO CIVIL ACTION NO. 3:10-CV-00857-JJB-SCR**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE AS TO ONE WITNESS' OPINION
OF ANOTHER WITNESS' TESTIMONY**

Defendants Stifel Financial Corporation, Stifel Nicolaus & Co., Inc., Stone & Youngberg, LLC, and Anthony Guaimano (collectively, the "S&Y Parties") submit this memorandum in support of their Motion *in Limine* to exclude any testimony or evidence regarding whether one witness believes another witness' trial or pretrial testimony was untruthful. Such evidence violates the Federal Rules of Evidence and impermissibly intrudes upon the fundamental role of the jury in determining witness credibility.

**INTRODUCTION**

The tactic of pressuring witnesses to label one another as liars based on their differing perceptions, understandings, or recollections has been squarely and repeatedly condemned. *See, e.g., United States v. Schmitz*, 634 F.3d 1247, 1268 (11th Cir. 2011) ("We first conclude that there was error in the district court's decision to allow the prosecutor to require Schmitz to say whether other witnesses were lying, and to allow the prosecutor to make comments related to these questions in his closing argument."); *United States v. Harris*, 471 F.3d 507, 511 (3d Cir. 2006) ("Today, we follow our sister circuits and hold that asking one witness

- 1 -

whether another is lying is inappropriate. Such questions invade the province of the jury and force a witness to testify as to something he cannot know, *i.e.*, whether another is intentionally seeking to mislead the tribunal."); *United States v. Thomas*, 453 F.3d 838, 846 (7th Cir. 2006) ("Because the evaluation of witness credibility is the province of the jury, it is improper to ask one witness to comment on the veracity of the testimony of another witness."); *United States v. Williams*, 343 F.3d 423, 437 (5th Cir. 2003) ("The government concedes that the prosecutor acted improperly by asking Williams about the other witnesses' veracity."); *United States v. Sullivan*, 85 F.3d 743, 749-50 (1st Cir. 1996) ("counsel should not ask one witness to comment on the veracity of the testimony of another witness"); *United States v. Richter*, 826 F.2d 206, 208 (2d Cir. 1987) ("[T]he prosecutor asked Richter in a series of questions to testify that Lazzara was either mistaken or lying. This was improper cross-examination.").

Here, in a series of interviews and depositions over a two-year period, Securities and Exchange Commission ("SEC") investigators and counsel did precisely that. They relayed inconsistent assumptions and recollections between witnesses, and demanded a "yes or no" answer as to whether the other was lying. Compounding the witnesses' confusion, neither had first-hand knowledge of the underlying fact over which their testimony conflicted: namely, whether a *third* person had independently priced the securities at issue prior to executing the trades. Instead, the witnesses relied upon their own expectations and third-hand information to arrive at different conclusions as to what someone else did or did not do outside of their presence.

Making use of the SEC transcripts, plaintiffs here have taken up the mantle of the were-they-lying line of questions. In deposing the same witnesses deposed by the SEC, plaintiffs sought each witness' agreement that the other had lied.

Because such questioning is improper and such testimony inadmissible, the S&Y Parties move to preclude plaintiffs from soliciting testimony at trial regarding one witness' opinion of the truthfulness of another's testimony, and move to exclude the portions of the SEC and pre-trial transcripts in which such speculation these opinions are addressed.

## BACKGROUND

Michael Jennings was a salesperson at S&Y in charge of handling the Commonwealth account. Jack Turner supervised Jennings and also supervised the traders on the non-agency asset-backed securities trading desk. Neither Jennings nor Turner claims to have priced the securities in question prior to trading.

In a series of interviews and depositions with SEC investigators, Jennings and Turner were questioned about the Commonwealth trades and, particularly, who priced the trades at S&Y. During his 2010 SEC testimony, Turner testified that he had not talked with the trader who traded the securities in question – Doug Frigon – but Turner was "under the impression" Frigon would have priced the securities through the same process established by Frigon's predecessor.[1] In his 2011 testimony, Turner again testified that his prior understanding had been that Frigon was trained by his predecessor to price the securities, but Turner had since been told by SEC investigators that Frigon had not done so.[2]

Jennings also once believed that Frigon priced the securities, but was later told Frigon did not.[3] According to Jennings, he learned this information from a member of S&Y management, David Hsu, rather than from Frigon himself.[4] Jennings thought Turner also "understood" that Frigon did not price the trades based on the same meeting with Hsu or other meetings that Jennings did not attend.[5]

---

[1] *See* Turner Dec. 1, 2010 SEC Dep., pp. 337, 340, 344, attached as Exhibit A.

[2] *See* Turner, May 10, 2011 SEC Dep., pp. 25-27, attached as Exhibit B.

[3] *See* Jennings, Feb. 15, 2011 SEC Dep., pp. 274-76, attached as Exhibit C.

[4] *Id.* at 280, 309.

[5] *Id.* at 312.

Based on the witnesses' differing views as to what Turner understood and when – and despite the fact that neither claimed personal knowledge of what Frigon actually did – SEC investigators demanded a "yes or no" answer from Jennings as to whether Turner had lied:

Q. But [Turner] wasn't telling the truth. Correct?

A. Well, he was telling –

Q. He wasn't –

A. I don't know.

Q. You don't know? You just told us that you knew [Frigon] didn't price the bonds and [Turner] told the SEC that [Frigon] did price the bonds. So did Mr. Turner tell a lie to the SEC?

A. (No audible response).

Q. It's a simple yes or no.

A. (No audible response).

Q. You have to answer for the record.

A. I'm sorry.

Q. It's simple a yes or no?

A. I know. Can you repeat it?

Q. Did Mr. Turner lie to the SEC?

A. Can you repeat the question as you said it before?

Q. You told us that the story Mr. Turner was supposed to tell the SEC was that the desk priced the bonds. You told us you knew Doug Frigon did not price the bonds. Jack Turner went into the SEC and said that Doug Frigon did price the bonds.

A. Yes.

Q. So Mr. Turner told a lie to the SEC. Correct? Yes or no?

A. Yes.[6]

---

6    *Id.* at 281-83.

- 4 -

In deposing Jennings in connection with this case, plaintiffs seized upon this line of questioning and sought to confirm his "belief" that Turner lied to the SEC.[7] In response, Jennings reiterated that he had no personal knowledge of what Frigon did or did not do.[8] He further testified that he didn't even know what questions the SEC had asked of Turner, or specifically how Turner responded.[9] Despite his lack of personal knowledge as to what Frigon did, what Turner understood, what the SEC asked, or how Turner answered, Jennings agreed that he had "believe[d] at the time that Mr. Turner lied to the SEC."[10]

Leveraging Jennings' accusation against Turner, plaintiffs sought a similar opinion from Turner that Jennings had lied. Turner refused, stating that the disagreement was a matter of memory and that, "I can't go into Mike Jennings' head."[11] Abandoning the word "lied," but continuing to seek an opinion as to the veracity of Jennings' testimony, plaintiffs then asked whether Jennings had provided "false information."[12] Turner accepted this characterization and agreed that Jennings had given false information to the SEC regarding the 2009 meeting with Hsu, based on which Jennings had claimed that Turner had understood that Frigon had not done the pricing in question.[13]

The S&Y Parties now seek to exclude this inadmissible testimony, and to preclude plaintiffs from attempting to solicit similar testimony from witnesses at trial.

---

[7] *See* Jennings Dec. 15, 2015 Dep., pp. 178-82, attached as Exhibit D.

[8] *Id.* at 182.

[9] *Id.* at 186-87.

[10] *Id.* at 183-84.

[11] *See* Turner Sept. 2015 Dep., pp. 210-11, attached as Exhibit E.

[12] *Id.* at 216-17.

[13] *Id.*

**ARGUMENT**

**I.     The Testimony Is Inadmissible Under Rules 602, 701, 608, and 403.**

Under Rule 602, a witness may testify only as to his or her personal knowledge. Likewise, under Rule 701, a lay witness may testify in the form of an opinion only if the testimony is "rationally based on the witness's perception." Neither test is met. "Although courts have found [were-they-lying] questions objectionable on several grounds, perhaps the most obvious are that they ask the defendant-witness to speak on a matter of which he has no personal knowledge and that they may put him in a position, unless he is verbally agile, where he must either call another witness a liar or be seen as accepting that witness's account." *United States v. McGill*, 815 F.3d 846, 913 (D.C. Cir. 2016).

In every case in which a witness is pressured to brand another a liar, Rules 602 and 701 are violated because the witness cannot speak on personal knowledge to another's belief, recollection, or intent. *Schmitz*, 634 F.3d at 1268 ("[T]he were-they-lying questions have little or no probative value because they seek an answer beyond the personal knowledge of the witness."); *Harris*, 471 F.3d at 511 ("[s]uch questions . . . force a witness to testify as to something he cannot know"). Here, that problem is compounded. Not only do the questions require Jennings and Turner to speculate as to the inner thoughts of one another, they require speculation as to inner thoughts regarding facts that are beyond the personal knowledge of either witness in the first place.

Neither witness claims to have priced the securities himself or to have observed Frigon pricing the securities. Rather, Turner assumed Frigon did so based on Frigon's role in the trades and the training received from his predecessor, and Jennings heard that Frigon did not from yet someone else. Neither witness is competent to testify as to what Frigon actually did; much less the veracity of what the other believed Frigon may have done.

- 6 -

Moreover, to the extent the testimony may be claimed to relate to the character of either witness, it is impermissible character evidence under Rule 608. "While Rule 608(a) permits a witness to testify, in the form of opinion or reputation evidence, that another witness has a general character for truthfulness or untruthfulness, that rule does not permit a witness to testify that another witness was truthful or not on a specific occasion." *Schmitz*, 634 F.3d at 1268.

Finally, even if the evidence were not otherwise inadmissible, it should be excluded under Rule 403 because its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading of the jury. *See* Fed. R. Evid. 403. The Court has broad discretion to exclude evidence under Rule 403. *United States v. Allard*, 464 F.3d 529, 534 (5th Cir. 2006). Were-they-lying questions are properly excluded because "one witness's opinion that another person has or has not lied does not make it more or less likely that the person actually lied;" the questions "are argumentative;" they "distract the jury from the central task of determining what version of events is accurate;" and, they "ignore other possible explanations for inconsistent testimony" such as "lapses in memory, differences in perception, or a genuine misunderstanding." *Schmitz*, 634 F.3d at 1269. The unfair prejudice that follows from one witness's characterization of another's testimony substantially outweighs any probative value in presenting his or her speculation to the jury. Indeed, credibility is not an issue on which a jury needs a witness opinion.

## II. The Testimony Improperly Infringes on the Province of the Jury.

"Because the evaluation of witness credibility is the province of the jury, it is improper to ask one witness to comment on the veracity of the testimony of another witness." *Thomas*, 453 F.3d at 846; *see also Schmitz*, 634 F.3d at 1269 ("credibility determinations are to

be made by the jury, not the testifying witness"); *Richter*, 826 F.2d at 208 ("Determinations of credibility are for the jury . . . not for witnesses.") (internal citation omitted).

There is no question that litigants are entitled to draw out inconsistencies between witnesses' testimony, impeach witnesses through prior inconsistent statements, and otherwise lay bare false or inaccurate testimony on cross-examination. But the task of deciding which of two conflicting accounts is correct belongs uniquely and solely to the jury, "who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *Sartor v. Arkansas Nat. Gas. Corp.*, 321 U.S. 620, 627 (1944).

In attempting to present testimony as to whether one witness lied or gave false information, a litigant exceeds its own role of submitting contested facts to the jury's collective wisdom and, instead, presumes to tell the jury what to believe. Such testimony threatens to lull the jury into adopting a credibility determination it would not have reached itself, on the basis of the facts alone. Numerous courts have rightfully refused to allow such testimony, and this Court should as well.

## **CONCLUSION**

The impropriety and inadmissibility of evidence regarding one witness' opinion of another witness's testimony is well established. It is prohibited by the Rules of Evidence and offends the most fundamental notion of the jury function. Here, in addition, the credibility dispute between Jennings and Turner is further undermined by the fact that neither witness has personal knowledge of the very point on which they disagree.

For the foregoing reasons, the Court should grant the motion *in limine* and exclude any testimony or evidence related to whether Jennings or Turner believe that the other has given false testimony to the SEC, in pre-trial testimony, or on the witness stand at trial when that time arrives.

Respectfully submitted,

*/s/ Robert J. Dressel*
George C. Freeman, III (T.A.), 14272
Jamie L. Berger, 32340
David N. Luder, 33595
Robert J. Dressel, 35757
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700
Facsimile:   (504) 589-9701

*Attorneys for Stifel Financial Corporation, Stifel Nicolaus & Co., Inc., Stone & Youngberg, LLC, and Anthony Guaimano*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2016, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.

*/s/ Robert J. Dressel*

*{1184184_1}*