JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential      Michael Jennings on 12/15/2015      Page 1

```
 1              STATES UNITED DISTRICT COURT
 2                MIDDLE DISTRICT OF LOUISIANA
 3                        ---oOo---
 4    JOSEPH N. BROYLES, et al.,
 5                    Plaintiffs,
 6    vs.                      No. 3:10-857-JJB-SCR c/w
                                   3:10-854-JJB-SCR
 7    CANTOR FITZGERALD & CO,
      et al.,
 8                    Defendants.
 9    _____
10                      CONFIDENTIAL
11        VIDEOTAPED deposition of MICHAEL JENNINGS, taken on
12    behalf of Plaintiff at 315 Montgomery Street, San
13    Francisco, California, beginning at 9:11 a.m., and
14    ending at 6:45 p.m. on Tuesday, December 15, 2015,
15    before LYNNE LEDANOIS, CSR 6811.
```

www.huseby.com      Huseby, Inc. Regional Centers      800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

EXHIBIT D

Case 3:10-cv-00854-SDD-CBW    Document 588-5    05/13/16    Page 2 of 10

JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential                Michael Jennings on 12/15/2015                Page 178

```
 1      Q    Yes.
 2      A    I don't think Jack said -- I don't believe Jack
 3   said, I, Jack Turner, priced the trades.
 4      Q    In your prior testimony, you said that during
 5   the meeting with the SEC, Mr. Turner stated that Doug
 6   Frigon had priced the bonds.
 7           Do you recall that?
 8      A    Yes.
 9      Q    And you recall that during the meeting with the
10   SEC, Mr. Turner said that Doug Frigon had priced the
11   bonds?
12      A    I --
13      Q    I'm asking if --
14      A    I recall the testimony.
15      Q    -- your prior testimony in that regard was --
16      A    Right.
17      Q    At that point in time, when Mr. Turner made the
18   statement, you believed that Mr. Frigon had not reviewed
19   the trades; right?
20           MS. HANNA:  Objection, foundation.
21           THE WITNESS:  I was told that -- this is when I
22   found out that, yes, that he had not -- that he's saying
23   he had not priced the trades.
24   BY MR. REASONOVER:
25      Q    And that you --
```

Case 3:10-cv-00854-SDD-CBW   Document 588-5   05/13/16   Page 3 of 10

JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential          Michael Jennings on 12/15/2015          Page 179

```
 1       A    And he wasn't going to --
 2       Q    And you believe that Mr. Turner lied to the
 3  SEC --
 4            MR. FREEMAN:  Object to the form.
 5            MS. HANNA:  Object to the form.
 6  BY MR. REASONOVER:
 7       Q    -- when he claimed that Doug Frigon had priced
 8  the bonds --
 9            MR. FREEMAN:  Object to the form.
10  BY MR. REASONOVER:
11       Q    -- correct?
12            MR. FREEMAN:  Object.
13            THE WITNESS:  I believe that my prior testimony
14  is what I believe.
15  BY MR. REASONOVER:
16       Q    We can agree that your prior testimony was what
17  it was.
18            MR. REASONOVER:  I've received a note that
19  we're running out of tape.  So before we go off the
20  record, I would ask that the witness be sequestered
21  during the break, and we'll pick it up when we get back
22  on the record.
23            VIDEOGRAPHER:  This now marks the end of disk
24  labeled number 3 of the video deposition of Michael
25  Jennings.  We are now going off the record, and the time
```

Case 3:10-cv-00854-SDD-CBW   Document 588-5   05/13/16   Page 4 of 10

JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential                Michael Jennings on 12/15/2015                Page 180

```
 1   is 4:10.
 2                     (Recess taken.)
 3          VIDEOGRAPHER:  This is the beginning of disk
 4   label number 4 of the videotaped deposition of Mike
 5   Jennings.  We are now going back on the record, and the
 6   time is 4:15.
 7          MR. REASONOVER:  Let's go back off the record.
 8          VIDEOGRAPHER:  We are now going off the record.
 9                (Discussion off the record.)
10          VIDEOGRAPHER:  Proceed.
11   BY MR. REASONOVER:
12      Q   I'm going to hand you a copy of your deposition
13   testimony.  I guess it's testimony in an on-the-record
14   interview that you gave to the SEC February 15, 2011 at
15   Page 282.
16          Do you see, starting at Line 4, "You just told
17   us you knew that Doug didn't price the bonds and Jack
18   told the SEC that Doug" -- referring to Doug Frigon,
19   right? -- "did price the bonds.  So did Mr. Turner lie
20   to the SEC?"
21          Do you see the question being asked of you
22   there from Lines 4 to Line 7?
23          "Don't respond."
24          The SEC asks, "It's a simple yes or no.
25          "No response."
```

Case 3:10-cv-00854-SDD-CBW   Document 588-5   05/13/16   Page 5 of 10

JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential                Michael Jennings on 12/15/2015                 Page 181

```
 1              The SEC asks again, "You have to answer the
 2    question on the record."
 3              You make the statement, "I'm sorry."
 4              SEC asked, "It's a simple yes or no."
 5              You answer, "I don't know.  Can you repeat it?"
 6              Line 15, "Did Mr. Turner lie to the SEC?"
 7              You asked the question, "Can you repeat the
 8    question as you said it before?"
 9              Line 18, "You told us the story.  Mr. Turner
10    was supposed to tell the SEC was it the desk priced the
11    bonds?  You told us you knew that Mr. Frigon did not
12    price the bonds.  Jack Turner went into the SEC and said
13    that Doug Frigon did price the bonds."
14              Your response, "Yes."
15              Answer, "So Mr. Turner told a lie to the SEC;
16    correct or no?"
17              And your response, "Yes."
18              Remember, in your testimony today I asked if
19    you there was anything in your prior testimony that you
20    needed to change, if there was anything inaccurate.  You
21    said no; right?
22              You need to answer.
23         A    Yes.
24         Q    You recognize that it's a serious thing to
25    accuse someone of lying to the SEC; right?
```

Case 3:10-cv-00854-SDD-CBW   Document 588-5   05/13/16   Page 6 of 10

JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential                Michael Jennings on 12/15/2015                Page 182

```
 1     A   Yes.
 2     Q   You were under oath when you gave this
 3   testimony in 2011, just like you're under oath now;
 4   right?
 5     A   Yes.
 6     Q   You made the statement to the SEC that Doug
 7   Frigon did not price the bond; right?
 8     A   I was referring to what Dave Hsu had discussed
 9   with us.
10     Q   Did you learn something different between 2011
11   and now that causes you now to believe that Doug Frigon
12   did price the bonds?
13     A   I don't know what he did.
14     Q   In 2011, you gave testimony to the SEC that
15   Mr. Turner told a lie to the SEC?
16         MR. FREEMAN:  Kirk, if you want the record to
17   be clear, are you going to quote from the substantive
18   testimony?
19         MR. REASONOVER:  I'm sure you'll have the
20   opportunity to do it if you feel like there's something
21   to clear up.
22         MR. FREEMAN:  Do you not feel there's something
23   to clear up?
24         MR. REASONOVER:  Mr. Freeman, you're welcome to
25   do it.
```

Case 3:10-cv-00854-SDD-CBW   Document 588-5   05/13/16   Page 7 of 10

JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential          Michael Jennings on 12/15/2015           Page 183

```
 1       Q   When you made the statement that Mr. Turner
 2   lied to the SEC, did you believe that he had lied to the
 3   SEC?
 4           MR. REASONOVER:  Counsel, I'm asking the
 5   witness a question.  If you have follow up --
 6           MS. HANNA:  I'm just looking at what you put in
 7   front of him, which I'm entitled to do.
 8           MR. REASONOVER:  Sure.
 9           MS. HANNA:  I haven't said anything.
10   BY MR. REASONOVER:
11       Q   Mr. Jennings, did you believe that Mr. Turner
12   lied to the SEC when you made this statement in 2011?
13       A   I believe that Jack -- I believe that when we
14   met with the SEC, that we were supposed to refer to the
15   trades as the desk did the trades or the desk.  And so I
16   was not expecting to hear Doug's name used in the
17   discussion.
18           And then Mr. Turner used Doug's name, and I
19   thought he was referring to pricing the bonds.  And then
20   I mentioned it to my compliance officer and that's when
21   Mr. Zinkgraf walked me through this analogy that this
22   would be a lie to the SEC.
23       Q   So did you believe at the time that Mr. Turner
24   had lied to the SEC?
25           MS. HANNA:  Object to the form.
```

Case 3:10-cv-00854-SDD-CBW   Document 588-5   05/13/16   Page 8 of 10

JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential          Michael Jennings on 12/15/2015          Page 184

```
 1   BY MR. REASONOVER:
 2       Q   Did you believe at the time of the testimony
 3   you gave in 2011 that --
 4       A   I didn't -- no.  I walked out of the meeting
 5   and told Dave Hsu that I will say this, and I didn't
 6   catch it as -- I didn't -- that was it.  I kind of
 7   relayed it to Mr. Hsu and left it at that.  He said I
 8   didn't, you know -- I just left it at that.  And then --
 9       Q   So the statement here --
10       A   The term lie -- the term lie came from the SEC.
11   The SEC referred to it as a lie, so...
12       Q   That was their question.
13       A   So I guess -- yes.
14       Q   And they asked -- you'll see at the bottom of
15   282.  So did Mr. Turner -- "So Mr. Turner told a lie to
16   the SEC; correct?  Yes or no."
17           And your response was "Yes."
18           You're now telling us your response should have
19   been no.  Is that what you're saying?
20       A   No.  I'm not saying that.  I'm just saying that
21   he was supposed to refer to it as the desk trades and
22   then somehow Doug's name came in there.
23       Q   So by putting Doug's name in response to the
24   question who priced the bonds, are you saying that
25   that's a lie?
```

Case 3:10-cv-00854-SDD-CBW   Document 588-5   05/13/16   Page 9 of 10

JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential                Michael Jennings on 12/15/2015                Page 186

```
 1              MR. REASONOVER:  You're trying -- you're trying
 2   to draw a distinction between false -- between false and
 3   inaccurate, Counsel?
 4              MS. HANNA:  I'm sorry?
 5              MR. REASONOVER:  You're trying to draw a
 6   distinction between false an inaccurate?
 7              MS. HANNA:  You can answer the question if you
 8   understand it.
 9              THE WITNESS:  I have an understanding.  So the
10   statement that Jack used Doug's name, I don't know
11   exactly the question the SEC asked during that time.  So
12   that's --
13   BY MR. REASONOVER:
14       Q   I just read the transcript.  What do you
15   understand Mr. Turner to have told the SEC that was
16   inaccurate?
17              MS. HANNA:  You're presuming there is an
18   inaccuracy.  That's not what his testimony is.
19              MR. REASONOVER:  Right.  The testimony was "So
20   Mr. Turner told a lie to the SEC; correct?  Yes or no."
21   The response was "Yes."  And I'm asking the witness if
22   the -- if there is a lie or a false statement or an
23   inaccuracy, what is the inaccuracy?
24              MR. FREEMAN:  Objection, form.
25   BY MR. REASONOVER:
```

Case 3:10-cv-00854-SDD-CBW   Document 588-5   05/13/16   Page 10 of 10

JOSEPH N. BROYLES, ET AL. vs. CANTOR FITZGERALD & CO., ET AL.
Confidential                Michael Jennings on 12/15/2015                Page 187

```
 1      Q   You can answer the question.
 2      A   The inaccuracy, Jack used Doug's name.  I don't
 3  remember specifically how it was used as an answer to
 4  which question.
 5      Q   But the use of Doug's name you believe to have
 6  been inaccurate in the context of responding to the SEC;
 7  is that --
 8      A   I believe going into that meeting that we were
 9  to refer to everything as the desk.  So...
10      Q   Why were you going into the meeting with the
11  intention of referring to things as the desk instead of
12  identifying the individual who had been involved in
13  pricing the bonds?
14      A   Because my understanding is that Doug was not
15  going to say that he priced the bonds.
16      Q   So the goal of referring to the desk was to
17  deflect the question and not identify any individual
18  because no one at Stone & Youngberg was taking
19  responsibility for pricing the bond; is that correct?
20          MS. HANNA:  Object to the form.
21          MR. FREEMAN:  Object to the form.
22          MR. BURGE:  I object.  That's nonresponsive.
23  There is a question and he should answer it.  He hasn't
24  responded to the question, and I objected that it's
25  nonresponsive.
```