UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH N. BROYLES, ET AL. | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 10-854-JJB-CBW |
| CANTOR FITZGERALD & CO., ET AL. | |
| Consolidated with: | |
| JOSEPH N. BROYLES, ET AL. | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 10-857-JJB-CBW |
| CANTOR FITZGERALD & CO., ET AL. | |

**THIS APPLIES TO CIVIL ACTION NO. 3:10-857.**

### RULING

This matter is before the Court on several Motions in Limine (Docs. 583, 586, 601) to exclude testimony of the plaintiffs' proffered expert Philip Monteleone, brought by several defendants.[1] The plaintiffs, CA Funds,[2] filed a consolidated opposition (Doc. 657) to all three Motions in Limine. Oral argument is unnecessary. For the reasons stated herein, the Commonwealth defendants' Motion in Limine (Doc. 583) is **GRANTED**, Jennings' Motion in

---

[1] The first Motion in Limine (Doc. 583) is brought by defendants Commonwealth Advisors, Inc. ("Commonwealth") and Walter Morales (collectively, "Commonwealth defendants"). This motion incorporates by reference the arguments made in the S&Y Parties' Motion in Limine (Doc. 601). It also sets forth one page of supplemental arguments, but does not provide record or case citations to support the arguments being made. *See Commonwealth Defs.' Mot. in Limine* 2, Doc. 583. The second Motion in Limine (Doc. 586) is brought by the defendant Michael Jennings ("Jennings"). The third Motion in Limine (Doc. 601) is brought by defendants Stifel Financial Corporation; Stifel Nicolaus & Company, Inc.; Stone & Youngberg, LLC; and Anthony Guaimano (collectively, the "S&Y Parties").

[2] The "CA Funds" refers to: CA High Yield Fund, LLC; CA High Yield Offshore Fund, Ltd.; CA Core Fixed Income Fund, LLC; CA Core Fixed Income Offshore Fund, Ltd.; CA Strategic Equity Fund, LLC; CA Strategic Equity Offshore Fund, Ltd.; Sand Spring Capital III, Ltd.; Sand Spring Capital III, LLC; and San Spring Capital III Master Fund, LLC. *Pls.' Consol. Opp'n* 1 n.1, Doc. 657.

1

Limine (Doc. 586) is **GRANTED in part**,[3] and the S&Y Parties' Motion in Limine (Doc. 601) is **GRANTED**.

The basic facts of this case have been outlined by this Court in several previous rulings, and will not be reiterated herein. *See, e.g.*, Doc. 274.

**I.    EXPERT TESTIMONY**

CA Funds retained Philip Monteleone ("Monteleone") as an expert in forensic accounting to "perform a forensic analysis of securities trading by [Commonwealth] and [S&Y]; and the acquisition of S&Y by Stifel Financial and the subsequent transfer of assets by S&Y to Stifel, Nicolaus & Co." *Pls.' Consol. Opp'n* 1–2, Doc. 657. In doing so, Monteleone analyzed financial documents, prepared schedules, and evaluated internal controls. *Id.* at 2. His expert report sets forth the results of this analysis, in 90 pages of charts and financial schedules, as well as a narrative that analyzes these charts and schedules using the facts of this case. *Id.* at 2 ("[Monteleone's] report reflects quantitative calculations and related analysis that will assist the trier of fact to understand numerous complicated transactions, the financial consequences of transactions, and the financial motivations and incentives to participate in the conduct at issue."); *see Monteleone Report*, Doc. 601-3.

In his expert report, Monteleone bases his opinions on a concept known as the "fraud triangle." *Monteleone Report* 31, Doc. 601-3. The fraud triangle posits that three elements are typically present when fraud occurs: (1) employees have an opportunity to commit fraud; (2) employees feel pressure or motivation to commit fraud; and (3) employees possess attitudes or ethical values that enable them to rationalize the fraud after it occurs. *Id.* at 15. Monteleone

---

[3] Jennings' motion seeks exclusion of testimony offered by several experts, not just Philip Monteleone ("Monteleone"). For purposes of this ruling, only the arguments regarding Monteleone will be considered. Therefore, this ruling only **GRANTS** Jennings' Motion in Limine (Doc. 586) as it pertains to Monteleone's testimony.

2

opines that: (1) "Commonwealth and S&Y's participation in forming the Collybus CDO created the *opportunity* for fraud to take place;"[4] (2) "The financial incentives summarized [in the report] are consistent with the factors leading to the *motivation* of various parties affiliated with Commonwealth;"[5] and (3) "Commonwealth could be viewed as implicating S&Y, or *rationalizing* their actions through another entity's responsibility" and "S&Y may have *rationalized* their actions by asserting that it was someone else's responsibility to make sure fraud/misconduct was not occurring."[6]

**II.     DISCUSSION**

The admission of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702" or "FRE 702") and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 establishes that expert testimony is admissible only if: (a) the expert's testimony will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The proponent of expert testimony bears the burden of establishing the admissibility of the testimony. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). The "gatekeeping obligation" that a district court has under Rule 702 "applies to all expert testimony," not just scientific testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof at trial are the

---

[4] *Id.* at 16–21 (emphasis added).
[5] *Id.* at 21–24 (emphasis added).
[6] *Id.* at 24–27 (emphasis added).

traditional and appropriate means of attacking shaky but otherwise admissible evidence. *Daubert*, 509 U.S. at 596.

In the present motion, the defendants request this Court to exclude testimony offered by Monteleone. Specifically, the defendants seek exclusion of Monteleone's testimony regarding the "fraud triangle."[7] According to the defendants, this testimony is inadmissible because it based on "an untested, unreliable theoretical concept that attempts to opine on the mental states of witnesses and that would be severely prejudicial, and not at all helpful, to the jury." *S&Y Parties' Reply* 1, Doc. 698. In response, the plaintiffs argue that the fraud triangle is admissible under FRE 702 because it is widely recognized within the field of fraud examiners and because Monteleone does not attempt to use improper character evidence. *Pls.' Consol. Opp'n* 4–8, Doc. 657.

In support for their motions, the defendants and the plaintiffs rely on contradictory interpretations of this Court's prior ruling in *Travis v. State Farm Fire & Casualty Co.*, No. 04-281-D-M3 (M.D. La. Dec. 23, 2005) (Brady, J.). In *Travis*, this Court excluded proposed expert testimony utilizing the fraud triangle theory. According to the plaintiffs, "*Travis* does not stand for the proposition that reference to the fraud triangle itself is impermissible, rather it simply cannot be used to introduce otherwise inadmissible evidence of unrelated bad acts." *Pls.' Consol. Opp'n* 8, Doc. 657. The Court disagrees with the plaintiffs' interpretation of *Travis*—"while this Court in *Travis* was certainly concerned that the expert's testimony contained improper character evidence, that was not the sole basis for the exclusion." *S&Y Parties' Reply* 1, Doc. 698; *see Travis*, No. 04-

---

[7] *Pls.' Consol. Opp'n* 2–3, Doc. 657 (discussing the limited scope of the defendants' motions); *see Commonwealth Defs.' Mot. in Limine*, Doc. 583-1 (incorporating Doc. 601-1); *Jennings Mot. in Limine* 7–8, Doc. 586-1; *S&Y Parties' Mot. in Limine* 1, Doc. 601-1.

To the extent that the defendants' motions argue for exclusion of Monteleone's testimony beyond the scope of the fraud triangle, such request is **DENIED** at this time. The Court agrees with the plaintiffs, that "the ability of forensic accountants 'to present a vast quantity of calculations derived from disparate sources in an understandable format will assist the trier of fact.'" *Pls.' Consol. Opp'n* 9, Doc. 657 (quoting *Solstice Oil & Gas I L.L.C. v. OBES Inc.*, Civil Action No. 12-2417, 2015 WL 5059601, at *5 (E.D. La. Aug. 26, 2015)).

281-D-M3. Instead, this Court said it was concerned with the expert's testimony for three reasons: (1) the fraud triangle is "dubious at best" under *Daubert*; (2) it uses improper character evidence; and (3) the probative value is substantially outweighed by the danger of unfair prejudice. *Travis*, 04-281-D-MS.

In discussing the factors set forth in *Daubert*,[8] this Court stated that several of the factors weighed in favor of exclusion. *See Travis*, 04-281-D-M3, at *4. Specifically, the Court found that the fraud triangle theory is untested[9] and does not have a known rate of error or objective controls.[10] The Court did acknowledge, however, that the theory "appear[s] to have wide acceptance among the community of fraud professionals" and has been incorporated into the Statement of Auditing Standards 99 ("SAS 99"). *Id.* at *4. Because the *Daubert* factors did not provide a clear answer, the Court considered other factors including that the proffered opinions were beyond the expertise of a certified accountant.[11] For all of these reasons, the Court found that the fraud triangle theory was unreliable. *See id.* at *6 ("[The parties] have not pointed to any studies indicating that the likelihood that a person will rationalize committing fraud can be reliably predicated from the types of behaviors that [the expert] observed.").

The Court also reviewed the proffered testimony under FRE 403, concluding that the probative value of the expert's testimony was substantially outweighed by the danger of unfair prejudice. *Id.* at *9–11. Specifically, the Court stated that the testimony should be excluded

---

[8] "*Daubert* set forth a non-exclusive, non-dispositive checklist of factors to assist courts in assessing the reliability of proposed expert testimony, which includes whether the expert's technique of theory can be *tested*; whether it has been subject to *peer review and publication*; its known or potential *rate of error* when applied and the existence and maintenance of *standards* controlling its operation; and whether it is *widely accepted* within a relevant scientific community." *Travis v. State Farm Fire & Cas. Co.*, No. 04-281-D-M3 at *3 (M.D. La. Dec. 23, 2005) (Brady, J.).
[9] *Id.* at *4 (stating that application of the fraud triangle requires "considerable professional judgment and may not readily lend itself to testing").
[10] *Id.* ("[I]t is also unlikely that there is a known rate of error or specific objective controls associated with the application of the fraud triangle.").
[11] *Id.* at *6 (noting that the expert did not indicate that "he has undergone specialized training in the art of detecting psychological conditions").

"because there is a serious risk that the jury will misinterpret [the expert's] testimony as a finding that [the defendant] did in fact commit fraud, and that the jury will rely on [the expert's] judgment rather than its own to evaluate evidence that it should be competent to understand." *Id.* at *9–10. As noted in *Travis*, "[t]he Court is aware of no published cases in the fifty of so years since the fraud triangle was developed where expert testimony based on the fraud triangle has been admitted." *Id.* at *7.

In the instant matter, Monteolone's proffered testimony regarding the fraud triangle has no meaningful distinction from the expert testimony proffered in *Travis*. As previously mentioned, this Court based its decision in *Travis* on three independent bases, one of which was the fact that it attempted to introduce improper character evidence. Although Monteleone's testimony does not present a similar concern involving character evidence, the reasoning set forth in *Travis* under *Daubert*, and the Court's conclusion regarding FRE 403,[12] is sufficiently similar to warrant exclusion in this case.

As was the case in *Travis*, at this time, the Court has no doubt that Monteleone is qualified in the field of forensic accounting and as a fraud examiner. "Accordingly, he may testify about all matters that will properly aid the jury, consistent with the Federal Rules of Evidence, in determining whether fraud occurred. . . . Therefore, [Monteleone] may testify, and the material in his report is generally admissible, but [his] opinions about whether the fraud triangle conditions were present . . . must be redacted out." *Id.* at *10–11.

---

[12] *Id.* at *5–8 (*Daubert*), *9–11 (FRE 403 balancing).

6

### III.  CONCLUSION

For the reasons stated herein, the Commonwealth defendants' Motion in Limine (Doc. 583) is **GRANTED**, Jennings' Motion in Limine (Doc. 586) is **GRANTED in part**, and the S&Y Parties' Motion in Limine (Doc. 601) is **GRANTED**.

Signed in Baton Rouge, Louisiana, on June 13, 2016.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**