UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSEPH N. BROYLES, *ET AL.*

v.

CANTOR FITZGERALD & CO., *ET AL.*

CIV. ACTION NO.: 3:10-857-JJB-CBW c/w
CIV. ACTION NO.: 3:10-854-JJB-CBW

THIS DOCUMENT APPLIES TO CIVIL ACTION NO. 3:10-857.

**RULING**

This matter is before the Court on a Motion in Limine (Doc. 589) brought by the defendants, Stifel Financial Corporation; Stifel, Nicholaus & Company, Inc. (collectively, the two are referred to as "Stifel Entities"); Stone & Youngberg, L.L.C. ("S&Y"); and Anthony Guaimano ("Guaimano"). The plaintiffs, the CA Funds,[1] filed an opposition (Doc. 662). Oral argument is unnecessary. For the reasons stated herein, the defendants' Motion in Limine (Doc. 589) is **DENIED**.

**I.   BACKGROUND**

The basic facts of this case have been outlined by this Court in several previous rulings, and will not be reiterated herein. *See, e.g.*, Doc. 274. The following is a recitation of the relevant facts, as alleged by the CA Funds.

The CA Funds' financial advisor, Commonwealth Advisors ("Commonwealth"), devised a scheme which caused the CA Funds to "invest in risky residential mortgage–backing securities."

---

[1] The "CA Funds" includes: CA High Yield Fund, L.L.C.; CA High Yield Offshore Fund, Ltd.; CA Core Fixed Income Fund, L.L.C.; CA Core Fixed Income Offshore, Ltd.; CA Strategic Equity Fund, L.L.C.; CA Strategic Equity Offshore Fund, Ltd.; Sand Spring Capital III, Ltd.; Sand Spring Capital III, L.L.C.; and Sand Spring Capital III Master Fund, L.L.C. *Pls.' Opp'n* 1 n.1, Doc. 662.

1

*Defs.' Supp. Mem.* 1, Doc. 589-1. The CA Funds allege S&Y and Guaimano participated in the financial mismanagement scheme proctored by Commonwealth. *Id.* at 1–2.

After completion of the alleged financial scheme, the Stifel Entities purchased S&Y and its outstanding equity interests in October of 2011. *Id.* at 1. The CA Funds do not accuse the Stifel Entities of any involvement in the scheme. *Id.* at 2. However, the CA Funds do claim the Stifel Entities should be held liable for "the pre–acquisition conduct of S&Y based on a list of theories including assumption of liability, de facto merger, mere continuation, veil piercing, alter ego, and single enterprise." *Id.* at 2 (citing *Fourth Am. Compl.* ¶¶ 483(a)–514, Doc. 509).

The Stifel Entities do not dispute its ownership interest in S&Y nor does it dispute the fact that at the outset of this trial, the Stifel Entities, S&Y, and Guaimano all maintained the same representation. *Id.* at 4–5. The Stifel Entities do claim, however, that as the case progressed, it became evident the claims brought against the defending parties differed in nature. *Id.* at 5. As a result, the Stifel Entities enlisted new, separate counsel from that of S&Y and Guaimano so their attorneys could "focus only on the issues unique to them."[2] *Id.* at 4–5.

The defendants filed the present motion to "exclude evidence of and reference to the fact that Stifel obtained new counsel to represent them at trial[.]" *Id*. at 1.

II.   DISCUSSION

The defendants make two arguments to exclude this evidence: (1) the evidence is not relevant, and thus has no probative value; and (2) alternatively, the prejudicial effect of the

---

[2] On June 3, 2016, the defendants filed several motions to make the following changes to counsel: (1) George C. Freeman, III, shall withdraw as counsel for Stifel but remain as trial counsel for S&Y and Anthony Guaimano; (2) Stephen H. Kupperman shall enroll as trial counsel for Stifel; (3) Jamie L. Berger shall withdraw as counsel for Stifel, but remain as counsel for S&Y and Anthony Guaimano; (4) David N. Luder shall withdraw as counsel for S&Y and Anthony Guamiano but remain as counsel or Stifel; and (5) Robert J. Dressel shall withdraw as counsel for Stifel but remain as counsel for S&Y and Anthony Guaimano. *Defs.' Supp. Mem.* 1 n.1, Doc. 589-1; *see* Docs. 685, 686, 687, & 688.

2

evidence outweighs any probative value. *Id.* at 6. In response, the CA Funds' argue that the evidence is probative to its claims for piercing the corporate veil and alter ego liability.[3] *Pls.' Opp'n* 2–3, Doc. 662.

### A. Relevance

The defendants argue that evidence of the Stifel Entities' change in counsel is not relevant to the material facts of the trial, and thus, has no probative value. *Defs.' Supp. Mem.* 1, 6, Doc. 589-1. According to the defendants, this evidence "has no bearing on whether S&Y and Guaimano committed the acts alleged or whether the CA Funds have any legal basis to hold Stifel Financial and/or Stifel Nicholaus liable for the pre-acquisition conduct of S&Y." *Id.* at 5. The CA Funds contend, however, that this evidence is relevant to its piercing the corporate veil and alter ego claims. *Pls.' Opp'n.* 3, Doc. 662.

Relevant evidence is evidence having "any tendency to make a fact more or less probable than it would be without the evidence" if "the fact is of consequence in determining the action." Fed. R. Evid. 401. For example, evidence is relevant if it helps analyze an element of a claim.

Piercing the corporate veil and alter ego claims are theories of liability in which a parent corporation can be held liable for the actions of its subsidiary. *See United States v. Jon-T Chems., Inc.*, 768 F.2d 686 (5th Cir. 1985). In determining whether a corporation may be regarded as the alter ego of another, California courts[4] consider a wide range of factors. *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811–12 (Cal. 2010). One such factor is the employment of the same attorney. *Id.*; *Gerristen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1043 (C.D. Cal. 2015).

---

[3] The CA Funds also argue that the motion is premature and, therefore, should be deferred until trial. *Pls.' Opp'n* 2, Doc. 662. The Court, however, believes the issue is ripe for decision at this time.

[4] In its opposition, the CA Funds cite exclusively to California law for its argument that having the same attorney is relevant to piercing the corporate veil and alter ego claims. *Pls.' Opp'n* 3 n. 4, Doc. 662. The defendants make no argument to the contrary. *See Defs.' Supp. Mem.*, Doc. 589-1. The Court, therefore, assumes for present purposes that California law governs the CA Funds' piercing the corporate veil and alter ego claims.

3

In this case, the defendants are seeking to exclude exactly this type of evidence—evidence that the Stifel Entities and S&Y employed the same attorney during the early stages of this litigation. Although "[n]o single factor is determinative,"[5] evidence which goes towards any one factor will have a tendency to make the determination of the piercing the corporate veil and alter ego claim more probable. *See* Fed. R. Evid. 401. Therefore, the Court finds that such evidence is relevant to the CA Funds' claims against the defendants.

B.   **Prejudicial Effect**

In the alternative, the defendants also argue that any probative value of the evidence is substantially outweighed by its prejudicial effect. *Defs.' Supp. Mem.* 1, Doc. 589-1. Specifically, the defendants claim that allowing information of the Stifel Entities' change in counsel could prejudice the jury, thus punishing the Stifel Entities for exercising its fundamental right to choose a lawyer. *Id.* at 5 (citing *Tex. Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 178, 181 (5th Cir. 1992)).

Generally, relevant evidence is admissible. Fed. R. Evid. 402. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

As discussed above, the evidence at issue is relevant, and therefore probative to the defendants' liability under the piercing the corporate veil and alter ego theories of the case. The defendants failed to adequately explain how this evidence would prejudice the jury, other than to state that the evidence might make the jury "mistakenly conclude that being represented by the same attorney is evidence of a lack of legal separateness or improper collusion between the Stifel Entities and S&Y." *Defs.' Supp. Mem.* 5, Doc. 589-1 (discussing *Grimsely v. Methodist*

---

[5] *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 812 (Cal. 2010).

4

*Richardson Med. Ctr. Found., Inc.*, 2:09-CV-2011, 2011 WL 825749, *4 (N.D. Tex. Mar. 3, 2011)[6]). If necessary, however, this potential mistake can be cured by a limiting instruction. Therefore, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

**III.   CONCLUSION**

For the reasons stated above, the defendants' Motion in Limine (Doc. 589) is **DENIED.**

Signed in Baton Rouge, Louisiana, on July 14, 2015.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[6] The defendants rely on *Grimsley* for the proposition that "[t]he fact that two separate legal entities share the same attorney does not make them the same legal entity[.]" *Grimsley v. Methodist Richardson Med. Ctr. Found., Inc.*, 2:09-CV-2011, 2011 WL 825749, *4 (N.D. Tex. Mar. 3, 2011). According to the defendants, they fear that the jury may decide that the defendants collectively have the same claims brought against each party because they once utilized the same counsel. *Defs.' Supp. Mem.* 5, Doc. 589-1. The defendants' reliance on *Grimsley*, however, is misplaced. The court in *Grimsley* was analyzing which entity was the "employer" for purposes of a claim under the Age Discrimination in Employment Act ("ADEA"), a distinction that becomes clear when the quoted sentence is read in its entirety—"The fact that two separate legal entities share the same attorney does not make them the same legal entity and *would not enable a reasonable jury to find that Foundation was Grimsley's employer*." 2011 WL 825749, at *4 (emphasis added). Because "employer" is a term of art in employment discrimination cases, and because a cause of action in such a case hinges on identifying the "employer," this case is distinguishable.

5