UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH N. BROYLES, ET AL.

CIVIL ACTION

VERSUS

NO. 10-854-JWD-CBW

CANTOR FITZGERALD & CO., ET AL.

RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Doc. 1100) filed by Defendant Walter A. Morales, III ("Morales"). Defendant Commonwealth Advisors, Inc. ("Commonwealth") (collectively with Morales, "Defendants") joins this motion. (Docs. 1102, 1104.) Plaintiff, the Louisiana Firefighters' Retirement System, ("FRS" or "Plaintiff") opposes the motion, (Doc. 1107), and Morales has filed a reply, (Doc. 1108), to which Commonwealth has joined, (Docs. 1109, 1110). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motions are denied.

I. **RELEVANT BACKGROUND**

   A. **Factual Background**

FRS is a public pension fund. (*Joint Pretrial Order*, Doc. 1067 at 2.) FRS hired Defendants as its investment advisor. (*Id.*) Plaintiff alleges Defendants were fiduciaries. (*Id.*)

FRS alleges that, beginning in 2006, Defendants organized a family of investment funds, known as the CA Funds, to pool their clients' investments. (*Id.*) From 2006 through 2008, Defendants sold investments in the various CA Funds to the Plaintiff. (*Id.*) Defendants concentrated the CA Funds' own investments – particularly those of the Sand Spring Funds, the Core Fixed Funds, and the High Yield Funds – in mortgage-backed securities. (*Id.*) These

mortgage-backed securities experienced significant losses with the collapse of the U.S. housing market. (*Id.*)

FRS further alleges that, to conceal these losses from their clients, including Plaintiff, the Defendants overstated the value of the CA Funds. (*Id.*) As a result, the Net Asset Values of the CA Funds were grossly overstated, with the effect that Plaintiff significantly overpaid for each of its investments. (*Id.* at 3.)

Plaintiffs assert the following claims: (1) fraud and conspiracy to commit fraud; (2) violations of the Louisiana Securities Law and Delaware Securities Act; (3) breach of fiduciary duty; and (4) negligence and gross negligence. (*Id.* at 3–9.)

Defendants deny liability. (*Id.* at 9–10.) Morales argues that he is not the same as Commonwealth and that certain Commonwealth employees acted independently of Morales. (*Id.* at 10.) Defendants urge that they "exercised their best, reasonable business judgment, adhered to industry standards in the hedge fund and investment advisor industries, complied with all applicable statutory and regulatory duties, acted in good faith, and made no misrepresentations." (*Id.*) Moreover, "[i]n reporting values of the CA Funds' investments, Commonwealth [purportedly] relied in good faith upon independent brokers, valuation firms, auditors, third party administrators, and independent broker dealers to independently value or verify the values of assets, audit financial statements and to properly effect trades, using best execution as the case may be." (*Id.*) "Commonwealth also relied upon reputable D.C. regulatory counsel." (*Id.*) Defendants attribute Plaintiff's losses to, among other things, the "the unanticipated, unprecedented worldwide financial crisis and the meltdown of the home mortgage market (and plaintiff's own reaction which was contrary to these defendants' recommendations)." (*Id.* at 10–11.)

### B.  Procedural Background

The Court will not recount the full history of this case, which has spanned over fifteen years, six district judges, three magistrate judges, and one global pandemic. This is unnecessary to the Court's ruling. The Court will also defer for the moment recounting the procedural aspects relevant to jurisdiction; the Court will address that below. However, the Court feels it important to note  the temerity of the instant motion. Consider:

1. Defendant Cantor Fitzgerald & Co. ("Cantor") removed this case to federal court on December 22, 2010, alleging that this Court had jurisdiction under the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb(f)(2) ("SLUSA") and, alternatively, under the Class Action Fairness Act, § 1332(d) ("CAFA"). (Doc. 1 at 2–10.) All defendants, including Morales and Commonwealth, "consent[ed] to removal, although they [were] not required to do so under the [CAFA]." (*Id*. at 2 (citing 28 U.S.C. § 1453(b)).)

2.  Plaintiffs filed a *Motion Remand to the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana*, (Doc. 18) ("*Motion to Remand*"), which Cantor opposed on the ground that this Court had jurisdiction under SLUSA and CAFA, (*see* Docs. 18, 32).

3. Magistrate Judge Riedlinger recommended that the *Motion to Remand* be denied because (1) the case was properly removed under SLUSA, specifically under 15 U.S.C. § 78bb(f)(1); and (2) removal was also proper under CAFA, and Plaintiffs had failed to show that the local controversy or security case exceptions to CAFA jurisdiction applied. *Broyles v. Cantor Fitzgerald & Co.*, No. 10-854, 2011 WL 4737197, at *11 (M.D. La. Sept. 14, 2011) (Riedlinger, M.J.), Doc. 55 at 27 ("*MJ Report*"). The Court will provide more details on the *MJ Report* and its findings below.

3

4.  That report was adopted by Judge Brady. *Broyles v. Cantor Fitzgerald & Co.*, No. 10-854, 2011 WL 4729840 (M.D. La. Oct. 5, 2011), Doc. 58.

5.  On October 12, 2012, Magistrate Judge Riedlinger granted a motion for leave to amend. (*Ruling on Motion for Leave to Amend*, Doc. 86.) He recognized that "post-removal amendments to delete class allegations do not divest the court of subject matter jurisdiction under CAFA." (*Id.* at 5; *see also id.* at 4–5 & n.8 (analyzing issue and collecting cases).)[1] He also found "unconvincing" Cantor's "argument that it is improper to propose an amended complaint filed for the purpose of averting SLUSA preclusion." (*Id.* at 6; *see id.* at 7 & n.11 (analyzing issue and collecting cases).)[2] Magistrate Judge Riedlinger ultimately

---

[1] The Magistrate Judge explained:

> As acknowledged by Cantor, the plaintiffs' proposed elimination of all the class allegations does not affect the court's determination that it has jurisdiction. That is because post-removal amendments to delete class allegations do not divest the court of subject matter jurisdiction under CAFA. The case law supports this position and both parties acknowledged this principle in their memoranda. [*See Brinston v. Koppers Ind.*, Inc., 538 F. Supp. 2d 969, 974-75 (W.D. Tex. 2008) (leave granted to allow plaintiffs to withdraw all class allegations in CAFA case; amendment did not divest the court of federal jurisdiction under CAFA which was established at the time of removal), citing, *Braud v. Transp. Serv. Co*., 445 F.3d 801, 808 (5th Cir. 2006) (citing Judiciary committee Report on CAFA and noting general rule that once a federal court properly has jurisdiction over a removed case, subsequent events do not oust the court of jurisdiction); *State of Louisiana v. AAA Insurance*, 2011 WL 5118859 (E.D. La. Oct. 28, 2011) (analysis of statute, cases and general principles of jurisdiction leads to conclusion that neither state's subsequent withdrawal of class allegations nor fact that minimal diversity no longer exists divests the court of jurisdiction); *In re Burlington Northern Santa Fe Railway Company*, 606 F.3d 379, 380-81 (7th Cir. 2010) (plaintiffs' post-removal amendment to eliminate class allegations did not destroy CAFA jurisdiction).] Since CAFA jurisdiction is not affected by the amendment, this argument is not a basis to deny plaintiffs the opportunity to amend.

(Doc. 86 at 4–5 & n.8.)

[2] The Magistrate Judge explained:

> The decisions cited by the plaintiffs indicate that attempts to amend allegations to avoid SLUSA preclusion are not improper. These cases are persuasive. [*See, Northstar Financial Advisors, Inc. v. Schwab Investments*, 781 F. Supp. 2d 926, 943 (N.D. Cal. 2011) (giving plaintiffs opportunity to amend to plead claims that do not trigger SLUSA preclusion); *Hanson v. Morgan Stanley Smith Barney, LLC*, 762 F. Supp. 2d 1201 (C.D. Cal. 2011) (same); *U.S. Mortg., Inc. v. Saxton*, 494 F.3d 833, 843 (9th Cir. 2007) (generally, SLUSA does not prohibit amendment of

concluded that the issue of whether "this case remain[ed] governed by SLUSA after the amendment . . . [did] not significantly impact whether to allow the amendment, but . . . [was] better addressed in the context of a motion to dismiss rather than a motion to amend the complaint." (*Id.* at 7.)

6. Cantor, Morales, and Commonwealth then moved to dismiss that amended complaint on the grounds that "SLUSA mandates dismissal of the suit." (*Ruling on Defs.' Motions to Dismiss*, Doc. 111 at 10; *see also* Doc. 90 (Cantor's motion); *see also* Doc. 91 (Morales and Commonwealth's motion, which adopted Cantor's motion).) Judge Brady denied these motions. (Doc. 111 at 23–25.)

7. All parties (including Defendants) stated in 2016 *Joint Pretrial Order* that:

> This Court has subject matter jurisdiction pursuant to [CAFA], under 28 U.S.C. § 1453(b) and § 1332(d)(2). *See* [*MJ Report*, Doc. 55 at 27.] "[P]ost-removal amendments to delete class allegations do not divest the court of subject matter jurisdiction under CAFA." *See* [*Ruling on Motion for Leave to Amend*, Doc. 88 at 5.] The Commonwealth Defendants dispute whether the Court has Jurisdiction over Count Seven of the CA Funds' Fourth Amended Complaint.

(Doc. 872 at 1; *see also Fourth Am. Compl.* ¶¶ 530–546, Doc. 509 (setting forth allegations relevant to CA Funds' Count Seven, which is not relevant here).)

8. On February 1, 2017, Judge Brady dismissed the claims against these Defendants for lack of standing. (Doc. 927 at 3.) Plaintiffs appealed, (Doc. 929), and judgment was entered, (Doc. 931). In their appellee brief, Commonwealth and Morales certified jurisdiction.

---

the complaint after removal to avoid dismissal of claims); *Levinson v. PSCC Services, Inc.*, 2009 WL 5184363 (D. Conn. Dec. 23, 2009) (allowing plaintiffs to replead state law claims to avoid SLUSA preclusion); *Beckett v. Mellon Investor Services LLC*, 329 Fed. Appx. 721 (9th Cir. 2009)(same); *W.R. Huff Asset Management Co. v. Kohlberg, Kravis, Roberts*, 209 Fed. Appx. 931 (11th Cir. 2006) (same).]

(Doc. 86 at 7 & n.11.)

(*Original Brief on Behalf of Appellees Commonwealth Advisors and Walter Morales*, at 1, *Broyles et al. v. Commonwealth Advisors, Inc., et al.*, No. 17-30092 (5th Cir. Feb. 8, 2018), Doc. 107.) Defendants specifically said:

> Plaintiffs-Appellants ("Plaintiffs") filed their petition in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana on September 15, 2010. On December 22, 2010, then-Defendant Cantor . . . removed the matter to the U.S. District Court for the Middle District of Louisiana, asserting federal subject matter jurisdiction under [CAFA], 28 U.S.C. § 1332(d), and [SLUSA], 15 U.S.C. § 78bb. Plaintiffs filed a motion to remand on January 21, 2011, but the district court denied it, concluding that jurisdiction existed under both CAFA and SLUSA. Plaintiffs' subsequent withdrawal of their class allegations in the Fifth Amended Complaint did not divest the district court of jurisdiction over the matter.
>
> * * *
>
> This court has jurisdiction to review the district court's decision pursuant to 28 U.S.C. § 1291.

(*Id.* at 1–2.)

9. On September 19, 2019, the Fifth Circuit "conclude[d] plaintiffs have Article III standing and therefore vacate[d] the district court's summary judgment to the contrary and remand[ed] for further proceedings." (Doc. 952 at 5.)

10. On May 4, 2020, Defendants made an abrupt about-face and moved to dismiss for lack of subject matter jurisdiction. (Doc. 971.) Defendants now argued that "as a matter of law there was never removal jurisdiction under CAFA." (Doc. 971-1 at 2.) Defendants specifically contended, *inter alia*, that (1) SLUSA preclusion required dismissal and is jurisdictional, (*id.* at 9–13); (2) SLUSA preclusion and CAFA's jurisdictional exception controlled, (*id.* at 13–16); and (3) if SLUSA and CAFA jurisdiction existed simultaneously

at the time of removal, the amended complaint could not paradoxically both eliminate SLUSA preclusion and have no effect on CAFA jurisdiction, (*id.* at 17–21).

11. On December 29, 2020, Morales filed a motion to enroll Gary Gambel, Jennifer Willis, and Tony Clayton as additional counsel of record. (Doc. 979.) That motion was granted. (Doc. 981.) On January 5, 2021, the parties filed a joint pretrial order. (Doc. 984.) In the "Jurisdiction" section, the parties stated:

> This case was removed to this court in a motion initiated by a now-settled Defendant pursuant to [CAFA] and SLUSA. Due to subsequent events, defendants filed a motion—currently pending—to dismiss for lack of subject matter jurisdiction. (Doc. 971) Plaintiffs contend that this Court has subject matter jurisdiction pursuant to [CAFA], under 28 U.S.C. § 1453(b) and § 1332(d)(2). *See* [*MJ Report*, Doc. 55 at 27].

(*Id.* at 1.)

12. On January 15, 2021, Morales and Commonwealth's attorneys (from the Taylor Porter firm) filed a motion to withdraw as counsel for these defendants. (Doc. 993.) Taylor Porter indicated that, since Gambel, Willis, and Clayton enrolled, "it [was] no longer necessary for movers to remain as counsel of record" and "[i]t [was] not anticipated that any mover [would] participate in the trial of this matter or take an active role in any other proceedings in this matter." (*Id.* at 1.)

13. On January 19, 2021, Chief Judge Dick canceled the trial because of the COVID-19 pandemic and reset it for September 2023. (Doc. 994.) The case was stayed and administratively closed for six months prior to trial. (*Id.*) On the next day, Judge Dick granted Taylor Porter's motion to withdraw. (Doc. 997.)

7

14. The case remained inactive from January 20, 2021, until June 5, 2023, when Judge Dick set a status conference and ordered the parties to "be prepared to discuss with the Court any remaining claims and/or motions and discuss any pre-trial matters." (Doc. 998.)

15. On June 21, 2023, Plaintiffs moved to substitute Lara Richards and Kaja Elmer of Fishman Haygood as additional counsel of record. (Doc. 1000.) That motion was granted the next day. (Doc. 1001.)

16. The Court held the conference as scheduled on June 22, 2023. (Doc. 1002.) Patrick Broyles, Jason Burge, and Lara Katherine Richards appeared for Plaintiffs. (*Id.*) Gary Gambel and Jennifer Willis appeared for Defendants. (*Id.*) The minute entry reads: "The status of the case and upcoming trial were discussed." (*Id.*)

17. On June 23, 2023, Chief Judge Dick recused herself, and this matter was reassigned to Judge deGravelles. (Doc. 1003.)

18. Following the continuance of a status conferences, (Docs. 1004–1006), Judge deGravelles reset the September 2023 trial date to September 2024. (Doc. 1010.)

19. On August 31, 2023, attorney Rebecca Davis Lee filed a motion to enroll as additional counsel on behalf of Morales. (Doc. 1007.)

20. While Lee's motion to enroll was pending, attorneys Gambel, Willis, and Lee moved to withdraw as counsel of record for Morales "due to irreconcilable differences and issues which [could not] appropriately [be] disclosed" in the motion. (Doc. 1023 at 1.)

21. On February 6, 2024, Magistrate Judge Whitehurst held a telephone conference, granted Gambel, Willis, and Lee's motions, and ordered "that said counsel are withdrawn as attorneys of record for Walter Morales and Commonwealth Advisors, Inc." (Doc. 1024 at 1–2.) She gave Defendants until March 18, 2024, to enroll new counsel. (*Id.* at 2.)

8

22. On April 24, 2024, the Magistrate Judge issued a show cause order for May 15, 2024, requiring Morales to appear and show cause why he did not comply with the Court's order. (Doc. 1029.) The Magistrate Judge held the show cause hearing on that date. (Doc. 1032.) Morales did not appear, and no one appeared on his behalf. (*Id.*) Plaintiff's counsel advised they intended to proceed against the remaining Defendants and obtain a judgment. (*Id.*)

23. On May 16, 2024, Attorney Jack Whitehead filed a motion to enroll which stated [sic throughout]:

> NOW INTO COURT comes Plaintiff Walter A Morales, III, through the undersigned counsel, and moves this court to enroll Jack K. Whitehead, Jr. as counsel of record for Plaintiff in these proceedings. Plaintiff's counsel understands that former counsel, Mr. Gary Gambel, is withdrawing. However, Plaintiff's counsel could not reach Mr. Gambel at his office nor by email and hereby files this motion prior to his affirmation to withdraw. Because today is a pending deadline, counsel will supplement this motion upon proper confirmation at a later time.

(Doc. 1033.) Magistrate Judge Whitehurst granted Whitehead's motion to enroll on May 29, 2024. (Doc. 1039.)

24. On the same day, Judge deGravelles held a status conference. (Doc. 1040.) According to the minute entry, "Whitehead inform[ed] the Court that his motion to enroll [wa]s on behalf of Walter A. Morales, III, only. [Whitehead was] given 48 hours from the date of this conference to determine if he [would] be representing [Commonwealth] and if so, to file the appropriate motion to enroll." (*Id.* at 1.) Given Whitehead's new enrollment and his need to review the files, the Court reset the jury trial to August 4, 2025. (*Id.* at 2.) On May 31, 2024, Whitehead filed a motion to enroll on behalf of Commonwealth, (Doc. 1041), which was granted, (Doc. 1042).

9

25. On October 24, 2024, the Court held a status conference. (Doc. 1053.) The Court received an update on settlement negotiations. (*Id.*) Given that status, the Court denied all pending motions without prejudice, including Defendants' pending motion to dismiss for lack of subject matter jurisdiction, (Doc. 971). (Doc. 1053.) The Court gave the parties forty-five (45) days to file any new motions. (*Id.*) The parties also confirmed that the matter was ready to proceed to trial. (*Id.*)

26. Defendants filed no motions in that forty-five-day period.

27. On June 20, 2025, the parties filed another *Joint Pretrial Order.* (Doc. 1067.) Plaintiff asserted that the Court had jurisdiction under CAFA, per the *MJ Report*. (Doc. 1067 at 1 (citing Doc. 55 at 27).) Defendants then raised, nearly eight (8) months after the new motions, that they would file another motion to dismiss for lack of subject matter jurisdiction. (*Id.*) Defendants also asserted: "This court lacks subject matter jurisdiction, and [SLUSA] mandates dismissal of the plaintiff's claims, but the plaintiff can re-file in state court." (*Id.* at 9.)

28. On June 24, 2025, Jason Williams and Nicole Burdett filed a motion to enroll on behalf of Morales. (Doc. 1071.) Whitehead filed a motion to withdraw as Morales' attorney. (Doc. 1072.) Plaintiff opposed Whitehead's motion to withdrawal. (Doc. 1077).

29. On July 8, 2025, the Court held a status conference. (Doc. 1080.) Burdett informed the Court that Williams was in a serious accident and was hospitalized. (*Id.* at 1.) Burdett assured the Court that, if Williams could not participate in the trial, she could go forward alone as trial counsel, but she stated that she needed her client's consent. (*Id.* at 2.) Burdett had also not paid her triannual dues to the Middle District, so the motions to enroll and withdraw were kept pending. (*Id.* at 3.) Because of a conflict with a criminal case, the Court

had to continue the trial. (*Id.* at 2.) The Court selected October 20, 2025, as a trial date, and Plaintiff advised of a direct scheduling conflict with that date. (*Id.*) The Court advised Plaintiff's counsel to file a written motion to continue, if necessary. (*Id.*)

30. Two days later, on July 11, 2025, Morales filed a motion stating that he wanted Williams as lead counsel and Burdett as second chair and that both would be prepared to go by the trial date. (Doc. 1084.) Meanwhile, Plaintiff filed an unopposed motion to continue, citing conflicts with the jury trial and, more importantly, the fact that plaintiff counsel's wife was pregnant and due five days before the October 20, 2025, trial date. (Doc. 1083 at 1–2.)

31. On September 16, 2025, the Court issued an order:

> ORDER: In order to assist the Court in preparing for the September 25, 2025, pretrial conference, IT IS ORDERED that, on or before Thursday, September 18, 2025, at 9:00 a.m., the parties shall submit a list of all substantive rulings (with docket entry number) addressing any 12b motion, motion for summary judgment, Daubert motion, motion in limine, or any other motion that may have some impact on or relevance to the upcoming trial. The parties need not include rulings [which] deny the motions without prejudice or which do not address the substance of the motion. Additionally, in the pretrial order, Defendants raise an objection to subject matter jurisdiction based on [SLUSA]. (Doc. 1065-1 . . . at 9.) Plaintiff responds that this objection is untimely. ([*Id.*] at 1.) Accordingly, IT IS FURTHER ORDERED that, on or before Thursday, September 18, 2025, at 9:00 a.m., the parties shall submit pocket briefs, not to exceed five (5) pages, describing their positions on this issue. Signed by Judge John W. deGravelles on 09/16/2025.

(Doc. 1087).

32. On September 17, 2025, the Court granted Williams and Burdet's motion to enroll on behalf of Morales and Whitehead's motion to withdraw as counsel for Morales. (Docs. 1088, 1089.)

33. The parties subsequently submitted briefs in response to the September 16, 2025, order. (Docs. 1091, 1092, 1093, 1096, 1097.)

34. On September 19, 2025, the Court issued an order first striking Defendants' joint response, (Doc. 1093), because (a) Defendants had identified a number of motions that had been denied without prejudice but which Defendants now sought to re-urge; (b) Defendants did not file these motions within the forty-five day deadline given in October 2024; and (c) the Court "made it clear numerous times that it is not re-opening this case for further motion practice and discovery." (Doc. 1098 at 1.) The Court ultimately continued the trial, explaining:

> [T]he Court notes that it is deeply troubled by the fact that Defendants re-urged an objection to subject matter jurisdiction in the pre-trial order (Doc. 1065-1 at 1, 9), despite the Court's previous order to file any such motions in October of 2024, (Doc. 1053). This is particularly troubling considering how adamant this Court has been that this case needs to be tried.
>
> However, the Court is now faced with a serious challenge to subject matter jurisdiction on the eve of trial which the Court cannot resolve easily in the remaining month before trial begins. Despite the motion cut-off, the law is clear that challenges to subject matter jurisdiction may be urged at any time and may be considered by the court *sua sponte*. Further, the Court was recently faced with a situation where a different case was tried to verdict, the defendant/counterclaim plaintiff obtained a multi-million-dollar judgment, and yet, after the trial, the losing party raised an issue with subject matter jurisdiction which ultimately resulted in the Court having to vacate its judgment and dismiss the case because the Court lacked jurisdiction. *See Baton Rouge Ventures, LLC v. Cedar Grove Cap.*, LLC, No. CV 20-628-JWD-EWD, 2025 WL 569628, at *11 (M.D. La. Jan. 21, 2025), *report and recommendation adopted*, No. CV 20-628-JWD-EWD, 2025 WL 569654 (M.D. La. Feb. 20, 2025), *aff'd*, No. 23-30741, 2025 WL 2319327, at *1 (5th Cir. Aug. 12, 2025). That plaintiff is now facing the possibility of sanctions (in the amount of the multi-million-dollar jury verdict) for its alleged false representations about jurisdiction.

(*Id.* at 2.) The Court then allowed briefing on the jurisdictional motion. (*Id.* at 3.) The Court also set a status conference for October 28, 2025, for the selection of a new trial date. (*Id.*)

35. The parties submitted their briefing on the instant jurisdictional motion. (Docs. 1100, 1102, 1107, 1108.)

36. Meanwhile, Commonwealth filed a motion to continue the status conference. (Doc. 1103.) That motion was granted, and the status conference was continued to November 20, 2025. (Doc. 1105.) At the status conference, the Court continued the case to the current trial date of July 20, 2026. (Doc. 1112.)

Suffice it to say, the Court is once again deeply troubled by Defendants' conduct, which reflects, to put it mildly, the kind of gamesmanship which violates the spirit of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 1 (stating that the federal rules "should be construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." (emphasis added)).

## II.   RELEVANT STANDARD

In a Rule 12(b)(1) motion, a party may raise the defense of lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Generally, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). But, "[a] motion under 12(b)(1) should

be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss.*, 143 F.3d at 1010 (citation omitted); *see also Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss.* with approval).

There are two forms of Rule 12(b)(1) challenges to subject matter jurisdiction: "facial attacks" and "factual attacks." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Harmouche v. Consulate Gen. of the State of Qatar*, 313 F. Supp. 3d 815, 819 (S.D. Tex. 2018) (citing *Paterson*, 644 F.2d at 523). In considering a "facial attack," the court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Paterson*, 644 F.2d at 523.

Whereas, "[a] factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings—such as testimony and affidavits—may be considered." *Harmouche*, 313 F. Supp. 3d at 819 (citing *Paterson*, 644 F.2d at 523). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citation omitted). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* When a factual attack is made, the plaintiff, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

14

## III.    DISCUSSION

### A.  Parties' Arguments[3]

In short, Defendants argue that "as a matter of law[,] there was never removal jurisdiction under CAFA." (Doc. 1100-1 at 2.) According to Defendants, "at the time of removal, all claims were class action claims involving covered securities, triggering SLUSA preclusion and the CAFA exception. Later amendments cannot retroactively create federal jurisdiction where none existed at removal." (*Id.* at 3.) Defendants contend first that SLUSA preclusion requires dismissal. (*Id.* at 8–10.) Next, Defendant maintains that Magistrate Judge Riedlinger "erroneously concluded, without any discussion or analysis, that there was removal jurisdiction over all claims under both SLUSA and CAFA," and this "finding leads to a[n] illogical result: SLUSA requires dismissal, for lack of jurisdiction, of all claims; but at the same time, CAFA supplies jurisdiction over the same claims." (*Id.* at 10.) "Reading the language of CAFA's covered securities exception side-by-side with SLUSA makes it clear that if a class action claim is covered by SLUSA, it is, by definition, excluded from CAFA jurisdiction." (*Id.* at 13.) "Here, all claims fit within CAFA's 'covered securities' exception, just as all claims were covered by SLUSA preclusion. Thus, CAFA cannot be used to trump SLUSA." (*Id.* at 15 (cleaned up).) Defendants then argue Magistrate Judge Riedlinger erred again by allowing Plaintiff to cure the SLUSA preclusion bar by amendment, which, Defendants say, should have barred CAFA jurisdiction as well. (*Id.* at 16.) Finally, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. (*Id.* at 20–22.)

---

[3] As stated above, Morales filed the instant motion to dismiss, (Doc. 1100), and Commonwealth moved to adopt Morales' arguments "to limit duplicity, repetitive pleadings, and the burden upon this Court," (Doc. 1102 at 1; *see also* 1104 (order granting Commonwealth's motion to adopt).) Likewise, Morales filed the reply memorandum, (Doc. 1008), and Commonwealth moved to adopt that brief, (Docs. 1109; *see also* Doc. 1110 (order granting Commonwealth's motion)). Thus, though the Court refers to "Defendants' arguments" throughout the remainder of this ruling, the Court is in fact summarizing Morales' briefs.

15

Plaintiff responds that the case is not subject to dismissal under SLUSA. (Doc. 1107 at 9.) Plaintiff says the Court's prior decision is law of the case. (*Id.* at 9–10.) Moreover, this Court correctly decided that SLUSA preclusion does not apply to the Amended Complaint, which does not allege class claims. (*Id.* at 11–12.) Moreover, SLUSA preclusion doesn't apply (1) because FRS's claims do not involve "covered securities," (*id* at 12–13), and (2) such preclusion is expressly inapplicable to claims by state pension plans like FRS, (*id.* at 13–14).

Plaintiff also argues that CAFA jurisdiction existed at the time of removal, and subsequent events do not affect that jurisdiction. (*Id.* at 14–18.) Defendants are judicially estopped from arguing otherwise. (*Id.* at 15–16.) Further, CAFA's securities exemptions do not apply to these claims because, as the *MJ Report* found, (1) "the plaintiff's claims, and the class action, do not 'solely' involve a claim concerning a covered security, the subsection (d)(9)(A) exception is inapplicable," (*id.* at 19 (quoting *MJ Report*, Doc. 55 at 18 n.20), and (2) "the CAFA exemption for securities more broadly 'has been interpreted as not encompassing a claim that the security was fraudulently marketed because the claim does not enforce the rights of the security holder as such,'" (*id.* at 19 (quoting *MJ Report*, Doc. 55 at 10 (citing *Estate of Pew v. Cardarelli*, 527 F.3d 25, 31 (2nd Cir. 2008)))).) That decision is both correct and law of the case. (*Id.* at 19. *See id.* at 19–23.) Plaintiff also disputes Defendants' "elaborate argument about the relationship between SLUSA and CAFA," contending that the two laws serve different purposes and that, under binding Fifth Circuit law, SLUSA preclusion is not jurisdictional. (*Id.* at 23–25.) Plaintiff closes by stating that, if the Court finds that there is no jurisdiction, the appropriate remedy is to remand the case to the 19th Judicial District Court. (*Id.* at 25–26.)

Defendants reply: "The ultimate question relative to Defendants Motion is whether CAFA ever supplied jurisdiction at removal, given § 1332(d)(9)." (Doc. 1108 at 1.) Defendants say that

16

questions of jurisdiction are not subject to judicial estoppel or law of the case. (*Id.* at 2–3.) Moreover, Plaintiff cannot rely on the SLUSA carve-out for "state pension plans" because it does not trump the need for jurisdiction under CAFA. (*Id.* at 3–4.) "The relevant question for this Court is not how FRS now characterizes its claims, but rather how the claims were pleaded at the time of removal." (*Id.* at 4.)

> Here, Plaintiff[ ] concede[s] that, as found by Magistrate Judge Riedlinger, "investments including covered securities within those accounts were sold, and the proceeds were used to buy the CA Funds and Collybus. . ." (Doc 1107-Opp to Mtn for Lack of SMJ at 12). This admission demonstrates that the class claims, as pleaded at removal, implicated transactions "in connection with" covered securities.

(*Id.* at 5.) Further, "Plaintiff's attempt to limit the scope of 28 U.S.C. § 1332(d)(9)(C) by invoking [*Pew v.*] *Cardarelli* is unavailing." (*Id.*) The Court should instead look to the statutory text. (*Id.*)

Defendants assert that Plaintiff's contention that the CAFA securities exceptions do not apply is "both conclusory and unsupported by the record at removal." (*Id.* at 6.) "The statutory analysis requires the Court to determine whether, at the time of removal, the action 'solely involved' claims concerning covered securities under (d)(9)(A), or, alternatively, claims that 'relate to' rights, duties, or obligations 'relating to or created by or pursuant to any security' under (d)(9)(C)." (*Id.*) Here, the allegations of the original petition demonstrate that "the action, as pleaded at removal, was securities-centric and falls squarely within the scope of the CAFA exceptions." (*Id.*) Again, *Pew* should fall to the plain language of the statutes. (*Id.* at 6–7.) "The determinative question is whether CAFA's jurisdictional requirements were satisfied at removal, and if the securities exceptions in 28 U.S.C. § 1332(d)(9) applied, then CAFA 'shall not apply' and federal jurisdiction never attached." (*Id.* at 7; *see id.* at 7–8.)

17

Defendants next return to the SLUSA state pension plan argument. (*Id.* at 8–9.) They maintain Plaintiff's position is "internally inconsistent and unsupported by the record." (*Id.* at 8.) There is no evidence that FRS is in fact such a plan. (*Id.* at 8–9.) But, further, the carve-out only applies to covered securities, and Plaintiff cannot simultaneously argue that it can use this exception but that the action does not involve covered securities. (*Id.* at 9.)

### B. Law and Analysis

#### 1. Preliminary Points

The Court makes a few preliminary remarks before turning to the legal analysis. First, the Court need not resolve whether the law of the case doctrine or judicial estoppel can or should apply to these questions of jurisdiction. This Court does not rely on prior rulings because it is obligated to do so; the Court does so because it agrees with those decisions.

Second, though Defendants' initial memorandum was long and somewhat convoluted, their reply memorandum substantially narrows the issues. The keys questions to be decided are: (1) did the securities exception to CAFA apply at the time of removal? (*see Defs.' Reply*, Doc. 1108 at 1, 4, 6), and (2) does the SLUSA exemption apply?

Third, the Court agrees with Plaintiff that Defendants' decades-long procedural jockeying has left some confusion as to who has the burden on this motion. However, "the Fifth Circuit has clearly and repeatedly recognized that the burden falls to the party seeking remand to establish that an exception to CAFA applies." *Rowell v. Shell Chem. LP*, No. 14-2392, 2015 WL 3505118, at \*5 (E.D. La. June 3, 2015) (Barbier, J.) (citing *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d 793, 797 (5th Cir. 2007) ("[P]arties moving to remand the class action to state court must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction" and "the party moving for remand must prove the statutory citizenship requirement

18

by a preponderance of the evidence.")); *see also Racca v. EFG Gen. Partner Corp.*, No. 1:22-CV-142, 2023 WL 3938861, at *4 (E.D. Tex. June 9, 2023) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction. Once jurisdiction has been established preliminarily under CAFA, however, the objecting party bears the burden of proving by a preponderance of the evidence the applicability of any claimed jurisdictional exceptions." (citations omitted)). Nevertheless, the Court specifically notes that it would reach the same result, regardless of who possessed the burden, since it is clear that this Court has jurisdiction.

Turning to the general law, CAFA provides in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--
>
> **(A)** any member of a class of plaintiffs is a citizen of a State different from any defendant; . . . .

28 U.S.C. § 1332(d)(2). However, "[c]ertain securities-related class actions are also excepted from CAFA's expanded jurisdiction." *MJ Report*, 2011 WL 4737197, at *4; Doc. 55 at 10. Specifically, this securities exception provides:

> **(9)** Paragraph (2) shall not apply to any class action that solely involves a claim--
>
> **(A)** concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));
>
> . . . ; or
>
> **(C)** that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

28 U.S.C. § 1332(d)(9). The Court will now turn to these two subsections before addressing SLUSA preclusion.

### 2. *Section 1332(d)(9)(A)*

Magistrate Judge Riedlinger explained:

> Section 1332(d)(9)(A) excludes any class action "that solely involves a claim . . . concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 . . ." [*See* 15 U.S.C. § 77r(b)(Covered securities).] Jurisdiction over such claims exists elsewhere under federal law, such as under the [SLUSA], i.e., state-law fraud claims brought in connection with the purchase or sale of securities traded on a national stock exchange. [*See* 15 U.S.C. § 78bb(f)(Limitations on remedies). *See also*] 15 U.S.C. §§ 77r (b)(1) and 78bb(f).

*MJ Report*, 2011 WL 4737197, at *4; Doc. 55 at 10.

As stated above, at one time, Defendants argued that this exception didn't apply. The *Notice of Removal* asserts:

> CAFA does not apply to a class action that solely involves a claim concerning a covered security. 28 U.S.C. § 1453(d). The Complaint here does not solely involve a claim concerning a covered security, as the Complaint alleges that neither Collybus nor the CA Funds are covered securities. *See* Compl. ¶ 29 (alleging that CA Funds are "unregulated, high risk hedge funds"); Compl. ¶ 44 (alleging that Collybus was "an unregulated" CDO).

(Doc. 1 at 8 n.1.) Again, the *Notice of Removal* states that "All Defendants consent[ed] to removal, although they are not required to do so under [CAFA]." (*Id.* at 2.) Plaintiffs later agreed, saying, "Cantor does not dispute that the CA Funds and Collybus are not covered securities under SLUSA." (Doc. 37 at 5.)

Based on these representations, the *MJ Report* found:

> The parties do not dispute that the CA Funds and Collybus are not covered securities under SLUSA. Record document number 37, supplemental supporting memorandum, p. 4. Because the plaintiff's claims, and the class action, do not "solely" involve a claim

20

concerning a covered security, the subsection (d)(9)(A) exception is inapplicable.

*MJ Report*, 2011 WL 4737197, at *7 n.20; Doc. 55 at 9 n. 20.

Defendants now do an about-face, arguing that "Cantor misconstrued the phrase 'solely involve' in the exception, which applies to claims, not to factual elements contained within claims." (Doc. 1100-1 at 5 n.5.) They continue:

> Plaintiff[ ] may contend that the CAFA "covered securities" exception does not apply if any claim involves something other than a covered security. However, the exception is claim-based, not element-based. Where all claims in the complaint concern covered securities, as here, the exception applies and CAFA jurisdiction is excluded. Courts have rejected attempts to defeat the exception by pointing to incidental references to non-covered securities within claims.

(*Id.* at 14.)

Yet even now Defendants concede that "the existence of an unexcepted claim in a class action complaint means that CAFA confers federal court jurisdiction on that class action lawsuit." (*Id.* at 15 (quoting *Dominion Energy, Inc. v. City of Warren Police & Fire Retirement. Sys.*, 928 F.3d 325, 331 (4th Cir. 2019)).) "Significant to these proceedings, by § 1453(d)'s 'solely involves' language, CAFA allows for the removal of a class action that alleges both an excepted claim and an unexcepted claim." *Dominion*, 928 F.3d at 331. The Court finds that Plaintiff thus has the correct interpretation: "if the original Petition states any claim that does not concern a covered security or securities transaction, the exception to CAFA jurisdiction in (d)(9)(A) does not apply." (Doc. 1107 at 20.)

Here, that is clearly the case. Cantor identified certain paragraphs of the *Petition* demonstrating this. (*See Notice of Removal*, Doc. 1 at 8 n.1 (quoting *Pet.* ¶ 29(c), Doc. 1-4 at 12 ("In every aspect, the CA Funds were unregulated, high risk hedge funds; however,

21

Commonwealth led Broyles to believe that the funds functioned in essentially the same way as a publically-traded mutual fund."); *Pet.* ¶¶ 44–50, Doc. 1-4 at 16–17 (stating that Collybus was "an unregulated" CDO and that Defendant's conduct surrounding the "2007 Collybus deal . . . constitute[d] negligence, mismanagement of investor funds, misrepresentations and omissions of material fact in the sale of a security, violations of Louisiana Blue Sky law, breach of fiduciary duty and/or breach of contract.")).) Plaintiff now identifies others. (*See Pet.* ¶ 88, Doc. 1-4 at 26 ("Additionally, it is alleged that a reasonable jury, finding the preceding allegations to be true, could conclude that the creation and sale of Collybus was intended by Cantor and Commonwealth to mutually benefit the parties to the detriment of Broyles and other Investors.").)

Thus, as Plaintiff and all defendants—*including Commonwealth and Morales*— previously recognized and as Magistrate Judge Riedlinger, (*MJ Report*, Doc. 55), and Judge Brady, (Doc. 58), also found, Section 1332(d)(9)(A) does not apply because the original *Petition* does not plead "any class action 'that *solely* involves a claim . . . concerning a covered security' . . . ." *MJ Report*, 2011 WL 4737197, at *4 (citing 15 U.S.C. § 77r(b)); Doc. 55 at 10. As a result, this part of Defendants' motion is denied.

### 3. *Section 1332(d)(9)(C)*

The *MJ Report* also correctly stated:

> Section 1332(d)(9)(C) excludes any class action "that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 . . . ) and the regulations issued thereunder." This subsection has been interpreted as not encompassing a claim that the security was fraudulently marketed because the claim does not enforce the rights of the security holder as such. [*Pew,* 527 F.3d at 31].

2011 WL 4737197, at *4; Doc. 55 at 10–11. *See also Pew*, 527 F.3d at 32 ("The present claim— that a debt security was fraudulently marketed by an insolvent enterprise—does not enforce the

rights of the Certificate holders as holders, and therefore it does not fall within § 1332(d)(9)(C) and § 1453(d)(3).”). *See also Zakinov v. Ripple Labs, Inc*., 369 F. Supp. 3d 950, 962 (N.D. Cal. 2019) (stating that this CAFA exception “applies to suits asserting that the promises made in securities have not been honored but does not apply to suits asserting fraud or other misconduct in the sale of securities.” (citing, *inter alia*, *Pew*, 527 F.3d at 31–33)). *Cf. Lillie v. Stanford Tr. Co*., No. 3:13-CV-03127-N, 2014 WL 12834802, at *5–6 (N.D. Tex. Oct. 6, 2014) (extending *Pew* to negligence claim; noting that “[t]he plain language of *Pew* limits section 1332(d)(9)(C) to claims arising from the terms of the security, regardless of whether the claim is based on fraud or negligence;” and stating that “[a] number of courts considering the scope of section 1332(d)(9)(C) have followed the Second Circuit's lead.” (citing *Katz v. Gerardi*, 552 F.3d 558, 563 (7th Cir. 2009); *MJ Report*, 2011 WL 4737197, at *4; *Tuttle v. Sky Bell Asset Mgmt., LLC*, No. 10-3588, 2011 WL 208060, at *7 (N.D. Cal. Jan. 21, 2011))).

Magistrate Judge Riedlinger rejected Plaintiff's argument for remand based on this exception, explaining:

> Plaintiff also argued that the § 1332(d)(9)(c) [sic] exception applies. Plaintiff did not cite a statute or court decision which persuasively supports the application of the exception in this case. The basis of the plaintiff's claim does not derive from “the rights, duties . . . and obligations relating to or created by or pursuant to any security . . .” Plaintiff's claim relates to the sale of his investment portfolio and his investment in the CA Funds, and the CA Funds’ purchase of Collybus.

*MJ Report*, 2011 WL 4737197, at *7; Doc. 55 at 19. Again, Judge Brady adopted this decision. (Doc. 58.)

After doing an independent analysis, this Court agrees. The original *Petition* alleges:

> The present action is brought under Louisiana law against the defendants in connection with the creation, structuring, management, offering, placement, sale, and/or valuation of, as well

23

as other transactions relating to, a collateralized debt obligation ("CDO") issued at a face value of approximately $1.012 billion (U.S.), *as well as the defendants' tortious acts surrounding the sale of securities, self-dealing by and between the defendants, breach of fiduciary duty, mismanagement of plaintiffs investments, misrepresentations, misstatements, omissions, and other violations of Louisiana law, including Louisiana Blue Sky law*, any and all of which acts have caused plaintiff and other similarly situated investors to sustain hundreds of millions of dollars in losses.

(*Pet.* ¶ 1, Doc. 1-4 at 2 (emphasis added).) Plaintiffs based their claims in part on "[n]egligent and/or intentional misstatements and omissions of the truth; [ ] [v]iolations of Louisiana Blue Sky law, La. R.S. 51:01 *et seq.*"; and "defendants['] . . . liabil[ity] for having joined together to commit a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for each other, or to cause a loss or inconvenience to Broyles and other Investors and/or for having joined together to commit other intentional tortious acts in violation of Louisiana law." (*Pet.* ¶¶ 87(b), 87(c), 89, Doc. 1-4 at 25–26.)

Considering the law and these allegations, the Court cannot find that the *Petition* pled a "class action that *solely* involves a claim . . . that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security . . . ." 28 U.S.C.§ 1332(d)(9)(C) (emphasis added). As a result, the Court finds, like Magistrate Judge Riedlinger and Judge Brady, and as Defendants themselves once argued, that there was CAFA jurisdiction at the time of removal.

### 4.  SLUSA

SLUSA provides generally:

**(b) Class action limitations**

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--

24

> **(1)** an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> **(2)** that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p. Thus:

> SLUSA preempts a securities class action if four conditions are satisfied: (1) the action is a "covered class action;" (2) the claims are based on state law; (3) the action involves one or more "covered securities;" and (4) the claims allege a misrepresentation or omission of material fact "in connection with the purchase or sale" of the security.

*In re Enron Corp. Sec.*, 535 F.3d 325, 338–39 (5th Cir. 2008) (cleaned up).

The Court need-not engage in an extensive analysis of this statute, as Plaintiff correctly identifies the state pension fund carve-out. (*See* Doc. 1107 at 13–14 (discussing 15 U.S.C. § 77p(d)(2)(A), (B)).) Specifically, SLUSA provides in relevant part:

> Notwithstanding any other provision of this section, nothing in this section may be construed to preclude a State or political subdivision thereof or a State pension plan from bringing an action involving a covered security on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans that are named plaintiffs, and that have authorized participation, in such action.

15 U.S.C. § 77p(d)(2)(A). Thus, regardless of whether this case involves any covered securities, FRS's claims are not barred by SLUSA.

Defendants object in their reply on two grounds. (Doc. 1108 at 8–9.) Both are meritless.

First, Defendants assert that Plaintiff has not established through evidence that it qualifies as a "state pension plan" under the statute. (*Id.*) SLUSA defines this term as "a pension plan established and maintained for its employees by the government of the State or political subdivision thereof, or by any agency or instrumentality thereof." 15 U.S.C. § 77p(d)(2)(B).

25

But FRS was created by statute, specifically La. R.S. § 11:2251, which provides:

> A retirement system . . . known as the "Firefighters' Retirement System" . . . is hereby established and placed under the management of the board of trustees for the purpose of providing retirement allowances and other benefits under the provisions of this Chapter for firemen employed by any municipality, parish, or fire protection district of the state of Louisiana. The retirement system so created shall be established as of January 1, 1980.

La. R.S. 11:2251(A), (B). Defendants cite no law requiring Plaintiff to demonstrate through evidence what is so clearly established by operation of law, particularly when the SLUSA carve out appears to specifically contemplate this. *See* 15 U.S.C. § 77p(d)(2)(B).

Second, Defendants maintain that Plaintiff is inconsistent in its arguments about CAFA and SLUSA, but this too is mistaken. SLUSA provides no bar to a state pension bringing "an action involving a covered security . . . ." 15 U.S.C. § 77p(d)(2)(A). CAFA meanwhile excludes any class action "that *solely* involves a claim . . . concerning a covered security . . . ." 28 U.S.C. § 1332(d)(9)(A) (emphasis added). Thus, SLUSA permits a case by a state pension plan with at least one claim involving a covered security, and CAFA permits a case with at least one claim that is not a covered security. Thus, by the plain language of the statutes, the two can coexist under these circumstances.

As a result, the Court finds, once again, that SLUSA does not preclude the instant action. As a result, this part of Defendants' motion will be denied.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Doc. 1100) filed by Defendant Walter Morales and joined by Defendant Commonwealth Advisors, Inc. (Docs. 1102, 1104) is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>May 20, 2026</u>.

 

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

27